**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACLYN ANGELILLI, individually and on behalf of D.G., a minor, | Case No. 1:23-cv-16566 |
| Plaintiffs, | Hon. Manish S. Shah |
| v. | |
| ACTIVISION BLIZZARD, INC.; INFINITY WARD, INC.; TREYARCH CORP.; SLEDGEHAMMER GAMES, INC.; RAVEN SOFTWARE CORPORATION; MICROSOFT CORPORATION; EPIC GAMES, INC; ROBLOX CORPORATION; WAR DRUM STUDIOS LLC d/b/a GROVE STREET GAMES, INC; ROCKSTAR NORTH LIMITED; ROCKSTAR GAMES, INC.; TAKE-TWO INTERACTIVE SOFTWARE, INC.; SONY INTERACTIVE ENTERTAINMENT, LLC; NINTENDO OF AMERICA, INC.; GOOGLE LLC; and APPLE, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF ROBLOX CORP.'S MOTION TO
DISMISS PLAINTIFFS' COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ....................................................................................................... 4

I.     Section 230 Bars All of Plaintiffs' Claims Against Roblox. ............................... 4

    A.     Roblox provides interactive computer services. .................................. 6

    B.     Plaintiffs' claims treat Roblox as a publisher of user-created games..................... 7

    C.     The games at issue were created and developed by third parties. ........................ 10

        1.     Encouraging players to play the games does not render Roblox an "information content provider." ............................... 12

        2.     Providing neutral game development tools does not render Roblox an "information content provider." ............................... 12

        3.     Offering microtransactions did not convert Roblox into an "information content provider." ............................... 13

        4.     Plaintiffs' remaining allegations are insufficient to treat Roblox as an information content provider. ............................... 13

II.     The First Amendment Is an Independent Bar to Plaintiffs' Claims Against Roblox. ....... 15

III.     The UDTPA's Publisher Safe Harbor Provision Bars Plaintiffs' Claims Against Roblox. ................................................................................................. 16

IV.     Roblox is Not a "Product" Subject to Product Liability Law. ........................... 17

    A.     The Roblox platform and games are constantly changing. ................................ 17

    B.     Roblox is a service, not a product. ........................................................ 18

    C.     Plaintiffs' alleged harms flow from the dissemination of users' intangible information and ideas. ........................................................ 18

    D.     Plaintiffs do not plausibly allege any defects in the Roblox platform that render the platform "unreasonably dangerous." ....................... 19

V.     Plaintiffs' Negligence Claims Fail Because Roblox Does Not Owe Plaintiffs a Duty........................................................................................ 20

VI.     Plaintiffs' COPPA, IUDTPA, ICFDBPA, and IBIPA Claims Cannot Form the Basis for a Negligence Per Se Claim in Illinois. ...................................... 21

VII.     Roblox Did Not Cause Plaintiffs' Alleged Injuries........................................ 22

VIII.     Plaintiffs' Fraud-Based Claims Fail for Lack of Particularity and Lack of Reliance.................................................................................. 23

CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Ill. v. Alvarez,*
679 F.3d 583 (7th Cir. 2012) ............................................................8, 15

*Am. Amusement Mach. Ass'n v. Kendrick,*
244 F.3d 572 (7th Cir. 2001) ..................................................................16

*Am. Booksellers Ass'n, Inc. v. Hudnut,*
771 F.2d 323 (7th Cir. 1985) ..................................................................16

*Anderson v. City of Hermosa Beach,*
621 F.3d 1051 (9th Cir. 2010) ................................................................15

*Anderson v. Farmers Hybrid Cos., Inc.,*
87 Ill. App. 3d 493 (1980) ................................................................17, 18

*Anderson v. TikTok, Inc.,*
637 F. Supp. 3d 276 (E.D. Penn. 2022) ..................................................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................11, 14

*Avery v. State Farm Mut. Auto. Ins. Co.,*
216 Ill. 2d 100 (2005) .............................................................................23

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ..............................................................5, 6

*Bride v. Snap, Inc.,*
2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ........................................10

*Brown v. Ent. Merchs. Ass'n,*
564 U.S. 786 (2011) ..........................................................................8, 15

*Chi. Lawyers' Comm. for Civ. Rts. Under L., Inc. v. Craigslist, Inc.,*
461 F. Supp. 2d 681 (N.D. Ill. 2006) ........................................................7

*Chi. Lawyers' Comm. For Civ. Rts. Under L., Inc. v. Craigslist, Inc.,*
519 F.3d 666 (7th Cir. 2008) ....................................................................5

*Crosby v. Twitter, Inc.,*
921 F.3d 617 (6th Cir. 2019) ..................................................................22

iii

*Daniel v. Armslist, LLC*,
    926 N.W.2d 710 (Wis. 2019) ...................................................................5

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) .......................................................5

*Day v. TikTok, Inc.*,
    2022 WL 595745 (N.D. Ill. Feb. 28, 2022) ..............................................9

*Dyroff v. Ultimate Software Group, Inc*,
    934 F.3d 1093 (9th Cir. 2019) ...........................................................12, 13

*E. Coast Test Prep LLC v. AllNurses.com, Inc*,
    971 F.3d 747 (8th Cir. 2020) .................................................................14

*Ent. Software Ass'n v. Blagojevich*,
    404 F. Supp. 2d 1051 (N.D. Ill. 2005) ...................................................16

*F.T.C. v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ..............................................................12

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ......................................................................9

*Fair Hous. Council of San Fernando Valley v. Roommates*,
    521 F.3d 1157 (9th Cir. 2008) ...........................................................12, 14

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ..................................................13

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .....................................................................12

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ......................................................... *passim*

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ....................................13, 14

*Great N. Ins. Co. v. Amazon.com, Inc.*,
    524 F. Supp. 3d 852 (N.D. Ill. 2021) .......................................................7

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
    2012 WL 2866463 (N.D. Ill. July 10, 2012) ............................................7

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ....................................................6, 9, 13

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ..................................................................18

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ..............................................................................19

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ......................................................................5, 6, 11

*Johnson v. Armstrong*,
    211 N.E.3d 355 (Ill. 2022) .................................................................................20

*Jones v. Microsoft Corp.*,
    649 F. Supp. 3d 679 (N.D. Ill. 2023) ..................................................................22

*Kimzey v. Yelp!, Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ............................................................................14

*L.W. v. Snap, Inc.*,
    675 F. Supp. 3d 1087 (S.D. Cal. 2023) ................................................................9

*McCarthy v. Amazon.com, Inc.*,
    679 F. Supp. 3d 1058 (W.D. Wash. 2023) ...........................................................6

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ...............................................................................4

*Morse v. Abbott Lab'ys*,
    756 F. Supp. 1108 (N.D. Ill. 1991) ....................................................................24

*NetChoice LLC v. Att'y Gen., Fla.*,
    34 F.4th 1196 (11th Cir. 2022) ...........................................................................16

*Page v. Blank*,
    262 Ill. App. 3d 580 (1994) ...............................................................................20

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir. 2007) .............................................................................6

*Peterson v. Wexford Health Sources*,
    986 F.3d 746, 751 (7th Cir. 2021) .......................................................................4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .............................................................................23

*Quinteros v. InnoGames*,
    2024 WL 132241 (9th Cir. Jan. 8, 2024) ...........................................................20

*Rodriguez v. OfferUp, Inc.*,
2019 WL 13247290 (M.D. Fla. Aug. 29, 2019) ......................................................9

*Salerno v. Innovative Surveillance Tech., Inc.*,
402 Ill. App. 3d 490 (2010) ...............................................................................19

*Sanders v. Acclaim Ent., Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002)................................................................19

*Small Just. LLC v. Xcentric Ventures LLC*,
2014 WL 1214828 (D. Mass. Mar. 24, 2014)......................................................14

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ........................................................22

*Stayart v. Yahoo! Inc.*,
651 F. Supp. 2d 873 (E.D. Wis. 2009)..................................................................6

*Test Drilling Serv. Co. v. Hanor Co.*,
322 F. Supp. 2d 957 (C.D. Ill. 2003) ..................................................................21

*Tobey v. Chibucos*,
890 F.3d 634 (7th Cir. 2018) ................................................................................4

*Webber v. Armslist LLC*,
70 F.4th 945 (7th Cir. 2023) .............................................................................5, 7

*Whitmer v. Schneble*,
29 Ill. App. 3d 659 (1975) .................................................................................17

*Winter v. G.P. Putnam's Sons*,
938 F.2d 1033 (9th Cir. 1991) ............................................................................19

*Young v. Bryco Arms*,
213 Ill. 2d 433 (2004) .......................................................................................22

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ...............................................................................7

*Zimmerman v. Northfield Real Est., Inc.*,
156 Ill. App. 3d 154 (1986) ...............................................................................23

**Statutes**

740 ILCS § 14/1 *et seq.*...........................................................................................21

740 ILCS § 14/15 ......................................................................................................22

740 ILCS § 14/15 (b) ...............................................................................................21

815 ILCS § 510/1 *et seq.*................................................................................................21

815 ILCS § 815.505/1 *et seq.*.........................................................................................21

15 U.S.C. § 6501 ...........................................................................................................21

47 U.S.C. § 230(c)(1)..............................................................................................4, 5, 7

47 U.S.C. § 230(f)(2) ......................................................................................................6

47 U.S.C. § 230(f)(3) ....................................................................................................11

47 U.S.C. § 230(f)(4) ......................................................................................................6

**Other Authorities**

Restatement (Third) of Torts: Prods. Liab. § 19 (1998) ................................................18

**INTRODUCTION**

Roblox Corporation ("Roblox") provides an online social gaming platform that enables users to create and disseminate video games for other users to play with their friends. Roblox does not create any of the games on its platform. It provides only neutral tools to create those games. Roblox is no more the "creator" of the games on its platform than a recording studio is the "creator" of the music and songs that are produced using the forum and equipment it provides.

Plaintiffs' claims against Roblox fail for the following reasons:[1]

*First*, Section 230 is a defense to all of Plaintiffs' claims (Counts I – XIX) because the claims would hold Roblox legally responsible as "the messenger" for information that third parties created and developed. No matter what label Plaintiffs attach to their claims, at bottom the claims would hold Roblox liable for others' content and therefore must fail under Section 230. Roblox, like the other Platform Defendants, hosts and enables access to games created by third parties. Roblox fully endorses the arguments set out in Platform Defendants' Brief, which apply with equal force to Roblox. Roblox writes separately so that it can specifically address the implications of the fact that the games on the Roblox platform are created by third parties using neutral tools that Roblox and third parties make available. As explained further below, that is a distinction without a legal difference.

*Second*, the First Amendment protects Roblox from Plaintiffs' lawsuit. As explained in the Developer Defendants' Brief, video game content is protected speech, and, just as the First Amendment protects those who create speech, it shields those who curate and disseminate speech.

---

[1] As set forth in its accompanying Motion to Dismiss and detailed below, Roblox adopts all of the arguments in the concurrently filed Developer Defendants' motion to dismiss ("Developer Defendants' Brief") and Platform Defendants' motion to dismiss ("Platform Defendants' Brief").

*Third*, Plaintiffs' Uniform Deceptive Trade Practices Act ("UDTPA") claim (Count XIII) is barred by that statute's safe harbor provision.

*Fourth*, Plaintiffs fail to plead viable product liability claims (Counts I – VI) against Roblox. As the Developer Defendants explain, the games themselves are expressive media, not tangible or fixed "products." Roblox provides intangible and continually evolving online services to facilitate the dissemination and creation of gaming content. Moreover, Plaintiffs do not identify any defective design elements of Roblox that could give rise to a product liability claim.

*Fifth*, Plaintiffs' product liability and negligence claims targeting the dissemination of video game content (Counts I – VIII) fail because speech intermediaries like Roblox have no legal duty to protect their audiences from alleged harm from video game content.

*Sixth*, Plaintiffs' negligence per se claim (Count VII) alleging violations of various statutes fails because either the statutes do not provide for strict liability, or, in the case of the Children's Online Privacy Protection Act ("COPPA"), are preempted. Further, Plaintiffs fail to allege basic elements of their Illinois Biometric Information Privacy Act ("IBIPA") claim.

*Seventh*, Plaintiffs' claims (Counts I – XIX) fail because Plaintiffs fail to allege how Roblox directly or proximately caused their injuries.

*Finally*, the fraud-based claims (Counts XII, XIV – XVII), including the claim for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, fail because Plaintiffs have not identified any alleged misrepresentations sufficient to satisfy Rule 8, let alone Rule 9(b). The ***only*** alleged statement they attribute to Roblox is non-actionable opinion protected by the First Amendment, and Plaintiffs fail to plead facts to support knowledge or reliance.

## **BACKGROUND**

Plaintiff Jaclyn Angelilli brings this lawsuit on behalf of D.G., a 9-year-old minor who allegedly spends "6-8 hours per day . . . playing video games." Compl. ¶¶ 264-65. Plaintiffs allege D.G. is addicted to four sets of video games—*Fortnite*, unidentified games available through the Roblox platform, *Call of Duty: Modern Warfare*, and *Grand Theft Auto V*. Plaintiffs allege the games were "designed" to be addictive. *Id*. ¶¶ 29, 264.

Plaintiffs correctly allege Roblox is an "online 'social gaming platform' and game creation system that allows users to program games and play games ***created by other users***." *Id.* ¶ 314 (emphasis added); *see also id.* ¶¶ 328, 336. Roblox does not itself create or develop games but offers neutral tools that allow third-party users to design games. *Id.* ¶¶ 314, 336 (Roblox provides a "game creation system" that "allows users to program games," and to "create their own [ ] challenges" and other in-game content).[2] Users' games are made available through the Roblox platform. *Id*. Plaintiffs do not identify the specific games that D.G played on the Roblox platform, nor allege that Roblox developed them. Rather, Plaintiffs contend that D.G. became "addicted" to playing games that other users created. *Id.* ¶¶ 264, 314, 328, 336.

Despite this, Plaintiffs allege Roblox should be held liable for (1) making games available through its platform, which is allegedly designed to have "addictive properties," *id.* ¶¶ 507(b), 555(b) (pointing to "constant variety, social aspects, and numerous characters, skins and other content available for purchase"); (2) failing to warn consumers about these features, *id.* ¶¶ 537, 555(b), 558, 573(b), 593(b); and (3) providing social tools that allow players to interact, ¶¶ 332-33. Plaintiffs do not allege D.G. ever used Roblox's tools to create games, nor that he used Roblox's social messaging and chat features.

---

[2] Plaintiffs refer to Roblox games at times in the singular ("game") but elsewhere make clear they understand that Roblox hosts multiple games and is a "game creation system." *Id.* ¶ 314.

Plaintiffs also fault Roblox for allowing players to make "in-game purchases available through a virtual currency called Robux." Compl. ¶ 316, 339; *see also id.* ¶ 12, 13, 79, 80 507(b) 641, 741(b), 763(b), 895 (alleging Robux can be used to buy in-game virtual content, including "numerous characters, skins and other content," "items," and "perks"). Plaintiffs do not allege that any of these transactions or items are themselves unlawful, but that just by making in-game content available for purchase, Roblox is "mak[ing] in-game spending as easy as possible" and is providing a "social aspect" that is designed to make the games more engaging (and thus "addictive"). *Id.* ¶¶ 333-36, 339. Plaintiffs do not allege D.G. ever purchased Robux or used Robux to buy anything. *Id.*

## LEGAL STANDARD

A complaint must set forth enough facts to "state a claim to relief that is plausible on its face." *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Peterson v. Wexford Health Sources*, Inc., 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). While detailed factual allegations are not required, the complaint "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citations omitted).

## ARGUMENT

**I.      Section 230 Bars All of Plaintiffs' Claims Against Roblox.**

Section 230 of the Communications Decency Act provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *accord* § 230(e)(3) (expressly preempting inconsistent causes of action under state law). This provision "precludes

liability . . . where the success of the underlying claims requires the defendant to be considered a publisher or speaker of [third-party] content." *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023). That is, it bars claims based on the publication of allegedly unlawful third-party content. *See, e.g., Chi. Lawyers' Comm. For Civ. Rts. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008), as amended (May 2, 2008) (applying Section 230(c)(1) to bar claims against Craigslist based on allegedly unlawful advertisements posted by third parties); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968-69 (N.D. Ill. 2009) (same); *Daniel v. Armslist, LLC,* 926 N.W.2d 710, 717 (Wis. 2019) (same as to claims based on third-party firearm advertisements). The statute also bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

In applying Section 230, what matters is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009)). Thus, "a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory[.]" *Barnes*, 570 F.3d at 1102. This rule "prevents plaintiffs from using 'artful pleading' to state their claims only in terms of the interactive computer service provider's own actions, when the underlying basis for liability is unlawful third-party content published by the defendant." *Daniel*, 926 N.W.2d at 731. Courts have applied this

principle to bar product liability,[3] state consumer protection,[4] and misrepresentation and concealment claims,[5] among others.

Section 230 bars any claim where: "(1) defendant is the 'provider or user of an interactive computer service,' and (2) the defendant is being 'treated as the publisher or speaker' of (3) 'information provided by another information content provider.'" *G.G.*, 76 F.4th at 566.; *see also Barnes*, 570 F.3d at 1100-01 (same test); *accord Johnson*, 614 F.3d at 790 (same test).

### A.     Roblox provides interactive computer services.

An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The standard is not a high bar; "the definition of interactive computer service is construed broadly . . . ." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 884 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010).

Roblox is a provider of an "interactive computer service" because it is an "access software provider"[6] that "enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). In other words, Roblox hosts online games that are created and played by millions of users. Compl. ¶¶ 314, 328, 336. Roblox therefore provides "multiple users" "access . . . to a computer server," 47 U.S.C., § 230(f)(2), by operating servers that host the games. The video

---

[3] *See, e.g., Herrick v. Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019) ("the manufacturing and design defect claims seek to hold Grindr liable for its failure to combat or remove offensive third-party content").

[4] *See e.g., Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1108, 1118-19 (9th Cir. 2007) (Section 230 barred state unfair competition and false advertising actions).

[5] *See, e.g., McCarthy v. Amazon.com, Inc.*, 679 F. Supp. 3d 1058, 1074 (W.D. Wash. 2023) (concealment claim "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another" (cleaned up)).

[6] Section 230 defines "access software provider" as "a provider of software (including client or server software), or enabling tools that do any one or more of the following: (A) filter, screen, allow, or disallow content; . . . or (C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." 47 U.S.C. § 230(f)(4).

games that Roblox hosts are "content," and Roblox filters, screens, allows, disallows, transmits, receives, and displays that game content. Roblox, like virtually all other websites, thus satisfies prong one of the Section 230 test. *See e.g.*, *Chi. Lawyers' Comm. for Civ. Rts. Under L., Inc. v. Craigslist, Inc.,* 461 F. Supp. 2d 681, 698 (N.D. Ill. 2006); *Hadley v. GateHouse Media Freeport Holdings, Inc.*, 2012 WL 2866463, at *2 (N.D. Ill. July 10, 2012).

### B. Plaintiffs' claims treat Roblox as a publisher of user-created games.

The second prong of the Section 230 test is whether the claims would treat the defendant as the "publisher" of the relevant content. *G.G.,* 76 F.4th at 566. A claim "treats" a service provider "as a publisher" under § 230(c)(1) "where the success of the underlying claims requires the defendant to be considered a publisher or speaker of [third-party] content." *Webber*, 70 F.4th at 956-57; *see also G.G.*, 76 F.4th at 567 (focus is on whether the defendant's alleged conduct derives from its status or conduct as a publisher or speaker). Plaintiffs' claims here all fall comfortably within this protection. Plaintiffs seek to impose liability on Roblox based on two primary theories:

(1) **Counts I, IV, VII – XIII, XVIII – XIX:** Roblox facilitates the creation of games by users and makes those games available on its platform for users such as D.G. to access and play.

(2) **Counts II – III, V – IX, XI – XVII:** Roblox fails to warn users against the supposedly harmful nature of those user-created games.

Each theory targets core publisher activity and is barred by Section 230. *See Zeran*, 129 F.3d at 330 ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."); *accord Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 859 (N.D. Ill. 2021) (quoting *Zeran*, 129 F.3d at 330).

**Section 230 Bars Claims Based on Publishing the Games (Counts I, IV, VII-XIII, XVIII-XIX)**. Plaintiffs' central theory—which lies at the heart of their product design, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of consumer protection statutes, conspiracy, and in-concert liability claims (Counts I, IV, VII-XIII, XVIII-XIX)— is that Roblox "designed" the platform with "addictive properties," *See, e.g.*, Compl. ¶¶ 264, 314, 328, 331, 507(b) 510 (b), 517, 536, 555(b), 573(b), 593(b), 612 (b), 660(b), 670(e)(ii), 670(f)(ii), 685(b) 688(b), 716(b), 719(b), 741(b), 742(b), 763(b), 764(b), 786(e)(ii), 786(f)(ii), 806(g)(ii), 806(h)(ii), 822(b), 824(b), 839(b), 878(b). These allegedly "addictive" features include (i) providing engaging games, *id.* ¶ 331 ("the variety within Roblox ensures that users are never bored and want to stop playing the game; there are always new challenges, maps, and characters to try, making the game feel like an ever-evolving entity that never stops providing entertainment"); (ii) making a lot of content available, *id.* ¶¶ 336, 337, 507(b), 741(b), 763(b); (iii) facilitating "microtransactions" to access in-game third-party content for a fee, *id.* ¶ 317; (iv) facilitating in-game communications between players, *id.* ¶¶ 332-33, 507(b), 741(b), 763(b); and (v) hosting game creation tools, *id.* ¶ 314.

Although Plaintiffs challenge purported "properties" of the Roblox platform, those "properties" are ultimately ***third-party content*** that Roblox publishes on its platform. *See* Compl. ¶¶ 328, 314, 336. As Plaintiffs allege, the varied content within Roblox is what allegedly makes it more "addictive." *Id.* ¶ 336. But the variety within Roblox exists because users can create their own games and maps;[7] it is variety ***generated by the users***, which according to Plaintiffs keeps

---

[7] Plaintiffs do not allege that ***creating*** games is addictive or harmful. Nor do they allege that D.G. created any games on Roblox or used any of Roblox's game-creation tools. And Plaintiffs certainly do not allege that D.G. was addicted to or harmed by creating games. Even if Plaintiffs did, the First Amendment would bar those claims. *See* Developer Defendants' Brief § I (discussing, *inter alia*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 798 (2011), and *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-97 (7th Cir. 2012)).

players "hooked" or "coming back daily and playing for hours." *Id.* ¶ 337. The only way for Roblox to limit its liability under Plaintiffs' theory is by declining to publish games that Plaintiffs deem addictive,[8] monitoring all content available on its services to restrict access to such games, or limiting the number and variety of games available on its platform. Section 230 protects online service providers from exactly this type of claim. *See* Platform Developers' Brief § I.B.

**Section 230 Bars Claims Based on the Alleged Failure to Warn About the Allegedly Harmful Games (Counts II – III, V – IX, XI – XVII)**. Section 230 also bars the portions of Plaintiffs' product liability and negligence claims (Counts II – III, V – IX), negligent infliction of emotional distress claims (Count XI), consumer-protection claims (Counts XII – XIII), and misrepresentation claims (Counts XIV – XVII) premised on Roblox's alleged duty to warn users that the games are somehow addictive. *See, e.g.*, Compl. ¶¶ 660(c), 670(e)(ii), 660(f)(ii), 685(b), 688(b), 716(b), 786(e)(ii), 786(f)(ii), 806(g)(ii), 806(h)(ii), 822(b), 839(b), 842, 866, 882.

These claims fail because liability under this theory "ultimately arises from the company's transmission of the harmful content" provided by third parties. *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021); *see also Herrick*, 765 F. App'x at 591 ("failure to warn claim" is "inextricably linked to Grindr's alleged failure to edit, monitor, or remove the offensive content provided by his ex-boyfriend" and "barred by § 230"); *Day v. TikTok, Inc.*, 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (Section 230 barred complaint alleging that TikTok "did not put any warning" on sexually explicit third-party videos); *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at *3 (M.D. Fla. Aug. 29, 2019) (failure-to-warn claim was "artful pleading tactic" barred by Section 230); *L.W. v. Snap, Inc.*, 675 F. Supp. 3d 1087, 1100 (S.D. Cal. 2023) (same, where claim was "intertwined with Defendants' publishing activities and related allegations that they failed to

---

[8] It is not clear from the Complaint which games on Roblox's platform are allegedly addictive; Plaintiffs fail to allege which games D.G. played.

monitor and edit third-party content"); *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 280 (E.D. Penn. 2022) (barring product liability allegations that TikTok failed to "warn users of the risks associated" with allegedly harmful third-party videos); *Bride v. Snap, Inc.*, 2023 WL 2016927, at *7 (C.D. Cal. Jan. 10, 2023) (same, for failure-to-warn claim that "would require the editing of third-party content").

As described above, the only way Roblox could comply with a purported duty to warn that its services host "addictive features" (Compl. ¶¶ 336-37, 507(b), 741(b), 763(b)), would be to monitor every game it hosts to determine which ones may (in Plaintiffs' view) be "addictive." Such an expansive duty is barred by Section 230. *See* Platform Defendants' Brief § I.B.

Section 230 also bars Plaintiffs' claims for fraudulent misrepresentation, omission, concealment, inducement, and violation of the Illinois consumer protection statutes (Counts XII-XVII). *See* Platform Defendants' Brief § I.B. For claims that require an affirmative statement, the Complaint identifies only one made by Roblox, which is not actionable. Compl. ¶ 322 ( "Roblox provides a fun, supportive, and educational space where your child's imagination can thrive"); *see infra* § VIII. Otherwise, these claims repackage Plaintiffs' failure-to-warn theory, *i.e.*, that Roblox failed to warn that the Roblox platform has "addictive properties" and that the games "contained an inherent risk of abuse, addiction, and compulsive use." Compl. ¶¶ 660(c), 670(e)(ii), 660(f)(ii), 685(b), 688(b), 716(b), 786(e)(ii), 786(f)(ii), 806(g)(ii), 806(h)(ii).

### C.    The games at issue were created and developed by third parties.

The final Section 230 prong is whether the content was "provided by another information content provider." *G.G.,* 76 F.4th at 566. The statute defines "information content provider" as the "person or entity that is responsible, in whole or in part, for the creation or development of

10

information." 47 U.S.C. § 230(f)(3). Section 230 applies where the service provider "did not originate the material that the [plaintiffs] deem damaging." *Johnson*, 614 F.3d at 791.

That prong is met here. Plaintiffs allege they were harmed by games on Roblox's platform, which are created by users. Compl. ¶¶ 314, 328, 336. Roblox is a "'social gaming platform' and game creation system that allows users to program games and play games created by other users," and "players can create games and maps for other users to try and play." Compl. ¶¶ 314, 328, 336. Although Plaintiffs allege vaguely that Roblox works with "software engineers and game developers to ensure that their game includes the best psychological traits for player retention and addiction," *id.* ¶ 327, the Court is free to disregard that conclusory and fact-free characterization. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (conclusory statements are "not entitled to be assumed true" in motion to dismiss). What matters is that Plaintiffs do not directly allege that Roblox *creates* the allegedly harmful content, only that Roblox enables in-game functionality to help users create content and distributes or permits access to that content. *See* Compl. ¶¶ 328-29, 331, 316 (Roblox "offers in-game purchases available through a virtual currency called Robux"); 507(b) ("Roblox Corp. designed Roblox with addictive properties including . . . skins and other content available for purchase"); 555(b) (same); 573(b) (same).[9]

As explained below, Roblox provides only "neutral tools" that are protected under Section 230, even if Roblox (i) encourages users to play the games, (ii) provides those game development tools, and (iii) permits microtransactions. Plaintiffs' remaining allegations are conclusory and unsupported allegations that also fail to make it "very clear that the website directly

---

[9] Paragraph 37 of the Complaint, carefully alleges that Roblox "developed, tested, patented, assembled, manufactured, published, packaged, labeled, prepared, distributed, marketed, supplied, ***and/or*** sold" the games. (Emphasis added.) By using "and/or" Plaintiffs leave unclear ***which*** verb actually describes Roblox's activities. It is true that Roblox "published," "distributed," "marketed," and facilitated the sale of licenses to some games, but Roblox respectfully submits that the other verbs would be inconsistent with Plaintiffs' remaining allegations. *See, e.g.,* Compl. ¶¶ 314, 328.

participates in developing the alleged illegality." *Fair Hous. Council of San Fernando Valley v. Roommates*, 521 F.3d 1157, 1174 (9th Cir. 2008).

### 1.   Encouraging players to play the games does not render Roblox an "information content provider."

That Roblox promotes the games on its platform does ***not*** render Roblox an "information content provider" of the games. Any "suggestion that publishers must have no role in organizing or distributing third-party content in order to avoid 'develop[ing]' that content is both ungrounded in the text of Section 230 and contrary to its purpose." *Force v. Facebook, Inc.*, 934 F.3d 53, 70-71 (2d Cir. 2019); *accord Dyroff v. Ultimate Software Group, Inc*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting argument that "website develops content if it manipulates the content in a unique way through content-neutral tools"). "[A] service provider is "responsible" for the development of offensive content when it "specifically encourages" the creation of what is offensive about the content. *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009).

There is no plausible allegation that Roblox "encourages" illegal content here. Roblox encourages others' development and publication of ***video games***, including through the use of neutral tools that can be used to make lawful games entertaining, attractive, and diverse. Plaintiffs do not allege that Roblox requires users to input illegal content to develop or play games on Roblox's platform. Roblox is not an "information content creator" of the games or content at issue.

### 2.   Providing neutral game development tools does not render Roblox an "information content provider."

Roblox is also not responsible for the "creation or development" of users' games. Rather, Roblox's "game development system" makes available content-neutral tools to users. Plaintiffs allege that those tools have been misused, which necessarily reflects the choices of the ***users***, not of Roblox. It is the users who use the tools and develop the games, not Roblox. Accordingly,

12

Roblox is not an "information content provider" of the games' content. *See Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1098 (9th Cir. 2019) (online forum was not an "information content provider" though it provided "recommendations and notifications" about third-party content); *Herrick v. Grindr* LLC, 765 F. App'x 586, 591 (2d Cir. 2019) (dating app was not "developer" of geolocation data uploaded by user that a bad actor misused).

### 3. Offering microtransactions did not convert Roblox into an "information content provider."

Plaintiffs' allegations that Roblox offers in-game microtransactions for virtual content within the games, Compl. ¶¶ 316-17, do not transform Roblox into an information content provider either. As alleged in the complaint, microtransactions are simply a way to offer certain in-game content, such as "characters, skins and other content." Compl. ¶¶ 507(b), 741(b), 763(b). To avoid redundancy among Defendants' briefing, Roblox adopts and incorporates by reference the arguments set forth in the Platform Defendants' Brief, which further explain that there is no "for profit exception" to Section 230. *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020); *see* Platform Defendants' Brief § I.C.

### 4. Plaintiffs' remaining allegations are insufficient to treat Roblox as an information content provider.

Plaintiffs' conclusory allegations cannot overcome Section 230's "robust protections." *Goddard v. Google, Inc.*, 2008 WL 5245490, at *7 (N.D. Cal. Dec. 17, 2008). In *Goddard*, the plaintiff alleged that Google "'assists its customers in drafting AdWords and selecting keywords through both live support from its AdWords Specialists and its advertising campaign optimization services.'" *Id.* at *4 n.3, *7 (cleaned up). The court found that the "bare allegation" that Google provided these sorts of tools or aids to its customers, without any explanation as to how Google "encouraged [its customers] to create the allegedly fraudulent content," fell "far short" of the

*Roommates* standard required to divest Google of Section 230's "robust" protections. *Goddard*, 2008 WL 5245490, at *4 n.3, *7. Here, as in *Goddard*, there is no allegation that Roblox encouraged its users to create allegedly unlawful or "addictive" content.

Plaintiffs' other unsupported allegations, including that Roblox "acted in concert and entered into [patent] licensing agreements" with other Defendants to "keep users. . . addicted to Defendants' video games," likewise fall far short of that high standard. Compl. ¶¶ 78, 889, 909, 912. Plaintiffs do not offer any "factual content that allows the court to draw the reasonable inference" that Roblox conspired to use patents in a way that would render it a creator or developer of the at-issue games. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "fails to plausibly allege that" service providers are "'information content provider[s]'" under Section 230 where "the complaint's factual allegations plead[] no more than a 'sheer possibility' that [defendants were] wholly or partly responsible for creating or developing" the material at issue. *E. Coast Test Prep LLC v. AllNurses.com, Inc*, 971 F.3d 747, 752 (8th Cir. 2020). Plaintiffs here have done even less. *See also, e.g.*, *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1268-1269 (9th Cir. 2016) ("threadbare allegations of fabrication of statements are implausible on their face and are insufficient to avoid" Section 230's applicability); *Small Just. LLC v. Xcentric Ventures LLC*, 2014 WL 1214828, at *6-7 (D. Mass. Mar. 24, 2014), *aff'd*, 873 F.3d 313 (1st Cir. 2017) ( "acquisition of an exclusive license to the content … is an insufficient level of involvement in the development of the content to nullify CDA" protection). Roblox therefore is not an "information content provider" of the user-provided games and content at issue.

As explained here and in the concurrently filed Platform Defendants' Brief, all of Plaintiffs' claims meet all of the Section 230 requirements. *G.G.,* 76 F.4th at 566. Therefore, Section 230 bars Plaintiffs' claims holding Roblox liable for publishing allegedly harmful third-party content.

14

**II.    The First Amendment Is an Independent Bar to Plaintiffs' Claims Against Roblox.**

Video games express constitutionally protected speech, *Brown*, 564 U.S. at 794. Efforts to hold any Defendant liable for creating or disseminating such speech—or for failing to warn about its supposed dangers—violates the First Amendment. Developer Defendants' Brief § I. Plaintiffs' claims, properly understood, challenge the ***content*** of the games available on the Roblox platform. Compl. ¶ ¶ 329, 331, 332, 337-38. Roblox adopts and incorporates by reference the arguments set forth in the Platform Defendants' Brief explaining that the First Amendment protections include not only those who create speech (*i.e.*, the third-party users who create Roblox's games), but also those who disseminate speech created by others. *See* Platform Defendants' Brief § II.

This First Amendment protection likewise extends to interactive game elements that enable users to create their own experiences and generate their own content. *See, e.g., Brown*, 564 U.S. at 798 ("choose-your-own-adventure stories" protected). The First Amendment protects speech ***output***, as well as the "integral ***inputs*** that "facilitate []" the creation of expression, just as much as the expression itself. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-97 (7th Cir. 2012) (citing *Buckley v. Valeo*, 424 U.S. 1, 19 (1976)) (cleaned up); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010). Allowing Plaintiffs to hold Roblox liable for providing tools with which some users create allegedly harmful video game content would be like allowing an art studio to be liable for providing "brushes and canvas." *Id.* 621 F.3d at 1061-62.

Moreover, Plaintiffs cannot escape these protections by claiming that the games are addictive to minors. *See* Developer Defendants' Brief § I.B. As the Seventh Circuit explained in striking down an ordinance prohibiting the distribution of pornography that could "affect[] [the] thoughts," "socialization," and "unconscious responses" of its recipients, any such impact "simply demonstrates the power of . . . speech"; "[i]f the fact that speech plays a role in a process of

15

conditioning were enough to permit governmental regulation, that would be the end of freedom of speech." *Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 328-330 (7th Cir. 1985); *cf. Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 573 (7th Cir. 2001) (enjoining ordinance that limited minors' access to violent video games); *see also Ent. Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051, 1057 (N.D. Ill. 2005), *aff'd*, 469 F.3d 641 (7th Cir. 2006) (invalidating Illinois statutes that sought to regulate access to video games that were "harmful to minors"). Developer Defendants' arguments apply equally here: the First Amendment bars not only claims premised on the dissemination of the games, but also those premised on an alleged failure to warn about their purportedly harmful nature. *See* Developer Defendants' Brief § I.B; Compl. ¶¶ 593(b), 612(b), 716(b). These First Amendment principles bar claims based on Roblox's dissemination of the games and of tools to assist in the games' creation, including the games' content (*e.g.,* sounds, sights, interactivity, and other gameplay features) and what Roblox says (or does not say) about games. Plaintiffs allege that Roblox hosts "ever-evolving" content with "constant variety" that "never stops providing entertainment" (*id.* ¶¶ 331, 337); designs (or curates) their services to keep players "coming back" (*id.* ¶ 337); provides tools that allow users to create their own appealing games and content (*id.* ¶¶ 314, 328); and makes these user-created games available for users to play (*id.* ¶ 336). These reflect protected, "inherently expressive" "editorial judgment[s]." *NetChoice LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022).

### III.    The UDTPA's Publisher Safe Harbor Provision Bars Plaintiffs' Claims Against Roblox.

Plaintiffs fail to state a claim under UDTPA (Count XIII) for all the reasons in the Developer Defendants' Brief § II.E. Additionally, as set forth in the Platform Defendants' Brief § III.B, Plaintiffs' claims against Roblox for disseminating user-generated gaming content are

independently barred under the statute's safe harbor provision. Compl. ¶¶ 284, 298, 306; *See* Platform Defendants' Brief § II.B.

## IV.    Roblox is Not a "Product" Subject to Product Liability Law.

Plaintiffs also fail to state viable claims for product liability and negligence against Roblox under Illinois law. The product liability (Counts I – III) and negligence (Counts IV – VI) claims, which all depend on the existence of a "product," fail because Roblox is not a "product" subject to product liability law. Roblox adopts and incorporates by reference the Developer Defendants' arguments explaining why the intangible expressive media – Roblox and the games made available through the platform – are not "products." Developer Defendants' Brief § II.B. Plaintiffs' claims against Roblox specifically also fail because (i) Roblox is of a constantly changing nature; (ii) Roblox is a service, not a product; (iii) both Roblox and the games distributed on it are intangible ideas; and (iv) Plaintiffs do not plausibly allege any defects in Roblox's platform.

### A.    The Roblox platform and games are constantly changing.

Illinois courts have held that, for strict product liability to apply, the "nature [of the product] must be ***fixed*** when it leaves the manufacturer's or seller's control." *Whitmer v. Schneble*, 29 Ill. App. 3d 659, 663 (1975) (emphasis added); *see also Anderson v. Farmers Hybrid Cos., Inc.*, 87 Ill. App. 3d 493, 500 (1980) (the purpose "of strict liability would be defeated if products liability were to be applied to products whose character is easily susceptible to changes wrought by agencies and events outside the control of the seller."). A product is something that "reach[es] the user without substantial change." *Id.* (internal citations omitted).

The nature of Roblox is inherently ***unfixed***; it varies at the hands of its users. *Whitmer*, 29 Ill. App. 3d at 663; Compl. ¶¶ 314, 331, 336. The Roblox platform is shaped by its users, who engage with the platform to access other user-generated content and who interact with its tools to

"program" and "create" games developed outside of Roblox's control. Compl. ¶¶ 314, 328, 336; *Anderson*, 87 Ill. App. 3d at 500. Even if this Court finds that Roblox's game creation tools are of a fixed nature, the product liability claims should still be dismissed. Plaintiffs never allege that D.G. programmed any games within Roblox, or that D.G. used Roblox's game creation tools.

      **B.**     **Roblox is a service, not a product.**

    Services, like Roblox, "even when provided commercially, are not products." Restatement (Third) of Torts: Prods. Liab. § 19 (1998). As explained in the Platform Defendants' Brief, courts uniformly hold that commercially provided online services are not products. *See* Platform Defendants' Brief § III.A. Indeed, Plaintiffs correctly describe Roblox as a service: according to Plaintiffs, Roblox is an "online 'social gaming platform.'" Compl. ¶ 314. Just like a music studio is not a product but a service—a space with tools for musicians to create their own music—so too is Roblox a platform with tools for the creation of games. Compl. ¶¶ 314, 328, 336; *see, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) ("platform that connects users . . . is more akin to a service" and thus "not a product" subject to product liability law).

      **C.**     **Plaintiffs' alleged harms flow from the dissemination of users' intangible information and ideas.**

    Plaintiffs' allegations are premised on the intangible and unfixed information disseminated and created on Roblox by its users, not on the design of the platform itself. Plaintiffs allege that Roblox is designed with "addictive" features to keep players "coming back," such as "constant variety" and "social aspects." Compl. ¶¶ 331, 337, 507(b), 741(b), 763(b). But that variety and socialization within Roblox is ***user-generated***; product liability law does not apply when the "plaintiff's grievance . . . is with the information [transmitted], not with the tangible medium." Restatement (Third) of Torts: Prods. Liab., § 19 cmt. d. Holding Roblox liable for disseminating a "variety" of video games, where the alleged injury flows from the expressive content within those

18

games, would be akin to holding a publisher liable for a book that allegedly contains harmful or injurious information. *See, e.g.*, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1277, 1279 (D. Colo. 2002) (product liability claims based on how minors "interpreted and reacted" to video games "stem[med] from the intangible thoughts, ideas and messages contained within" the games, which "are not products"); *James v. Meow Media, Inc.*, 300 F.3d 683, 687, 701 (6th Cir. 2002) (similar); *see also* Platform Defendants Brief § III.A at 23 (describing *Estate of B.H. v. Netflix*, Case No. 4:21-cv-06561-YGR, ECF No. 22 (N.D. Cal. Sept. 22, 2021)). Plaintiffs' effort to hold Roblox liable for disseminating purportedly "addictive" speech is incompatible with product liability law.

### D. Plaintiffs do not plausibly allege any defects in the Roblox platform that render the platform "unreasonably dangerous."

Plaintiffs' product liability claims (Counts I – VI, VIII, IX) fail for at least one more reason: they do not plausibly identify any supposedly defective feature of Roblox's platform.

Product liability plaintiffs must establish "(1) a condition of the product that results from manufacturing or design; (2) the condition made the product unreasonably dangerous; [and] (3) the condition existed at the time the product left the defendant's control." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 498 (2010). "The key inquiry is whether the allegedly defective condition made the product unreasonably dangerous." *Id.*

Plaintiffs' conclusory allegations about Roblox do not meet this standard. Plaintiffs conclusively assert that Roblox designed its service "with addictive properties" such as "constant variety," "social aspects," and "numerous characters, skins, and other content available for purchase." Compl. ¶¶ 507(b), 741(b), 763(b). Yet Plaintiffs fail to explain how these or any other features are defective or—most importantly—how those features make Roblox "unreasonably dangerous." *Salerno,* 402 Ill. App. 3d at 498. In a conclusory manner, Plaintiffs allege that Roblox

19

engages "psychologists, neuroscientists, and other behavioral experts to ensure the addiction of minor users," Compl. ¶¶ 327, 510(b), 742(b), 764(b), but identify no feature that these purported experts supposedly designed. Plaintiffs also claim the "variety within Roblox ensures that users are never bored and want to stop playing the game" and that the "social aspect" within Roblox "that allows users to interact with friends or other users within the game" "pressures users to spend more money" as their friends do. *Id*. ¶¶ 331-33. But Plaintiffs fail to identify any features of Roblox designed to "pressure users" into spending money. Nor do Plaintiffs allege that D.G. used the social features on the platform. And, again, there is no basis to contend that making a game attractive and exciting is "unreasonably dangerous." These allegations cannot support a product liability claim.

The Ninth Circuit upheld the dismissal of a similar video game addiction lawsuit; this case should have the same result. In *Quinteros v. InnoGames*, the plaintiff sued the makers of a video game and "conclusorily allege[d]" that the game was "an unsafe product that cause[d] gaming addiction in its consumers." 2024 WL 132241, at *3 (9th Cir. Jan. 8, 2024). The Ninth Circuit held that while the plaintiff "identifie[d] certain features of [the game] which she asserts are addictive and harmful," she failed to make specific factual allegations to show that the game was "unreasonably addictive." *Id*. Likewise, here, Plaintiffs do not plausibly allege that any of the features of Roblox were "unreasonably addictive" or defective. *Id.*

## V. Plaintiffs' Negligence Claims Fail Because Roblox Does Not Owe Plaintiffs a Duty.

Plaintiffs' negligence-based claims against Roblox (Counts IV – IX) also fail because Roblox does not, as a matter of law, owe any duty of care to Plaintiffs, which alone is grounds for dismissal. *Page v. Blank*, 262 Ill. App. 3d 580, 581 (1994) ("The existence of a duty is a question of law to be determined by the court."); *see also Johnson v. Armstrong*, 211 N.E.3d 355, 371 (Ill. 2022) ("in every cause of action for negligence, the plaintiff must establish that a duty exists and must also identify what the duty is"). Roblox joins the Developer Defendants' argument that those

20

who create expressive speech owe no common law duty to the public to protect audiences from the speech, *see* Developer Defendants' Brief § II.C, and the Platform Defendants' argument that intermediaries who disseminate others' speech owe no common law duty to protect the public from that speech, *see* Platform Defendants' Brief § III.C.1.

## VI.    Plaintiffs' COPPA, IUDTPA, ICFDBPA, and IBIPA Claims Cannot Form the Basis for a Negligence Per Se Claim in Illinois.

Plaintiffs' attempt to craft a statutory duty of care under COPPA, IUDTPA, ICFDBPA, and IBIPA fail for the reasons set forth in the Developer Defendants' Brief § II.C and Platform Defendants' Brief § III.C.2: under Illinois law, statutory violations can form the basis of a negligence per se claim "only if the statute provides for strict liability if violated." *Test Drilling Serv. Co. v. Hanor Co.*, 322 F. Supp. 2d 957, 964 (C.D. Ill. 2003). Because none of the ICFDBPA, UDTPA and IBIPA provides for strict liability, Plaintiffs' claims against Roblox based on those statutes must fail. *See* 15 U.S.C. § 6501, 815 ILCS § 815.505/1 *et seq*., 815 ILCS § 510/1 *et seq*., 740 ILCS § 14/1 *et seq*.; *see also* Developer Defendants' Brief § II.C; Platform Defendants' Brief § III.C.2. Similarly, as Developer Defendants explain, COPPA does not permit a private right of action and expressly preempts Plaintiffs' tort claims. Developer Defendants' Brief § II.D.

Additionally, Plaintiffs do not plausibly allege Roblox violated IBIPA.[10] IBIPA generally provides that a company may not "collect, capture, . . . or otherwise obtain" a person's "biometric identifier" or "biometric information" without first providing notice and obtaining consent. 740 ILCS § 14/15 (b). Plaintiffs allege that the "voice chat" feature on Roblox violates § 15 of IBIPA and that therefore Roblox was negligent per se. Liability under § 15 of IBIPA requires a plaintiff to show that the defendant did something "beyond possession" of the biometric information; the

---

[10] Plaintiffs only make a negligence per se claim against Roblox, effectively alleging that a violation of IBIPA establishes a duty and breach for the purposes of a negligence per se claim. Plaintiffs do ***not*** make a claim under IBIPA against Roblox.

company "must undertake some effort to collect or obtain biometric identifiers or information." *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023); *see also Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022).

Plaintiffs fail to plead that Roblox even "possesses" D.G.'s biometric information. Plaintiffs plead that Roblox has a "voice chat feature" that "violates IBIPA" because it requires users to submit "identifying scans of their face." Compl. ¶ 640 (a). But Plaintiffs fail to allege that D.G. **used** Roblox's voice chat feature or that Roblox otherwise "collected, captured," actively stored, or used D.G.'s biometric information. *Stauffer*, 2022 WL 3139507, at *6 n.4. Plaintiffs also fail to plead facts suggesting that Roblox failed to provide notice or obtain consent from Plaintiffs. 740 ILCS § 14/15. Plaintiffs' claims against Roblox therefore fail to cross the "line from conceivable to plausible." *Stauffer*, 2022 WL 3139507, at *6.

## VII.    Roblox Did Not Cause Plaintiffs' Alleged Injuries.

As explained by the Developer Defendants, proximate (or legal) causation is an essential requirement of all of Plaintiffs' claims. Developer Defendants' Brief § II.A. Plaintiffs accuse Roblox of making allegedly addictive user-generated games available. But that is insufficient to be the legal cause of Plaintiffs' claimed injuries. *See* Platform Defendants' Brief § III.D. Where, as here, "defendants' business practices merely create a condition that makes the eventual harm possible," the "conduct cannot constitute a legal cause of the alleged [harm]." *Young v. Bryco Arms*, 213 Ill. 2d 433, 455 (2004). Causation is not established simply by making available neutral tools that users employ to create their own content or by distributing that user-generated content. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 (6th Cir. 2019) (affirming dismissal of a case against Google, Twitter, and Facebook based on "ripples of harm" allegedly stemming from third-party content) (quoting *Fields v. Twitter, Inc.*, 881 F.3d 739, 749 (9th Cir. 2018)).

Plaintiffs' allegations about microtransactions on Roblox's platform, Compl. ¶¶ 316-17, also fail to establish proximate causation as Plaintiffs do not allege that D.G. engaged in any such microtransactions. Roblox incorporates the arguments set forth in the Platform Defendants' Brief explaining why Plaintiffs allegations about D.G.'s purported microtransactions fail to establish proximate causation. *See* Platform Defendants' Brief § III.D.

## VIII.   Plaintiffs' Fraud-Based Claims Fail for Lack of Particularity and Lack of Reliance.

Plaintiffs' fraud-based claims (Counts XII, XIV, XV, XVI, and XVII) are subject to Rule 9(b)'s heightened standard. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir. 2011) ("a party who alleges fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake'"). Plaintiffs identify only one allegedly misleading statement by Roblox—that Roblox "provides a fun, supportive, and educational space where your child's imagination can thrive," Compl ¶ 322—but they do not explain why the statements are false, as Rule 9(b) requires. *See, e.g.*, *Pirelli*, 631 F.3d at 441-4 (a plaintiff alleging fraud must describe the '"who, what, when, where, and how' of the fraud"); *see* Developer Defendants' Brief § II.E.1. Nor could they, as subjective descriptions, characterizations, or opinions are not actionable as a matter of law. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 174 (2005) (stating that mere "puffing" is not considered a "deceptive practice under the Consumer Fraud Act"); *Zimmerman v. Northfield Real Est., Inc*., 156 Ill. App. 3d 154, 163 (1986) (noting that descriptions such as "magnificent" or "comfortable" are subjective and "cannot qualify as a fraudulent misrepresentation of fact"); Developer Defendants' Brief § I.B. This bare accusation falls far short of the Rule 9(b)'s heightened pleading standard for the reasons explained in the Developer Defendants' Brief. *See* Developer Defendants' Brief § II.E.

Plaintiffs also fail to allege that they even read Roblox's allegedly misleading statements before deciding to use Roblox. This is an independently sufficient basis for dismissal because

fraud-based claims require plausible factual allegations of actual reliance. *See, e.g.*, *Morse v. Abbott Lab'ys*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991) (dismissing fraud claims in a class action where plaintiffs failed to allege that they read the "misleading" statements or "even knew of their existence"); *see also* Developer Defendants' Brief § II.E.1.

## **CONCLUSION**

For these reasons and those set out in the Developer Defendants' Brief and the Platform Defendants' Brief, all the claims against Roblox should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Dated: April 19, 2024                    Respectfully submitted,

By */s/ Dominique Savinelli*
    Dominique Savinelli, #6323175
    **HUSCH BLACKWELL LLP**
    120 South Riverside Plaza, Suite 2200
    Chicago, Illinois 60606
    Telephone: (312) 526-1518
    dominique.savinelli@huschblackwell.com

    Will Stute, *pro hac vice*
    Behnam Dayanim, *pro hac vice*
    **Orrick, Herrington & Sutcliffe LLP**
    Columbia Center
    1152 15th Street, N.W.
    Washington, D.C. 20005-1706
    Tel: 202.339.8400
    Email: wstute@orrick.com
    Email: bdayanim@orrick.com

    David P. Fuad, *pro hac vice*
    **Orrick, Herrington & Sutcliffe LLP**
    355 S. Grand Ave., Suite 2700
    Los Angeles, CA  90071
    Tel: 213.629.2020
    Email: dfuad@orrick.com

    *Attorneys for Defendant*
    *ROBLOX CORPORATION*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 19, 2024, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented such service under the Court's local rules.

<em>/s/ Dominique Savinelli</em>