# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| JACLYN ANGELILLI, Individually and on behalf of D.G., a minor,<br><br>      Plaintiff,<br><br>    v.<br><br>ACTIVISION BLIZZARD, INC.; INFINITY WARD, INC.; TREYARCH CORP.; SLEDGEHAMMER GAMES, INC.; RAVEN SOFTWARE CORPORATION; MICROSOFT CORPORATION; EPIC GAMES, INC.; ROBLOX CORPORATION; WAR DRUM STUDIOS LLC d/b/a GROVE STREET GAMES; ROCKSTAR NORTH LIMITED; ROCKSTAR GAMES, INC.; TAKE-TWO INTERACTIVE SOFTWARE, INC.; SONY INTERACTIVE ENTERTAINMENT, LLC; NINTENDO OF AMERICA INC.; GOOGLE, LLC; and APPLE, INC.,<br><br>      Defendants. | Case No.: 1:23-cv-16566<br><br>Hon. Manish S. Shah |

## REPLY BRIEF IN SUPPORT OF DEVELOPER DEFENDANTS'
## <u>MOTION TO DISMISS</u>

TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................................1

ARGUMENT...........................................................................................................................4

    I.     The First Amendment Bars Each of Plaintiff's Claims ..............................4

          A.     The Alleged "Defective Features" in Developer
               Defendants' Games Are Expressive Content Protected
               by the First Amendment.....................................................................5

          B.     None of Plaintiff's Other Arguments Overcome the
               First Amendment...........................................................................13

    II.    Plaintiff's Claims Fail for Multiple Other Reasons ..................................15

          A.     Plaintiff Fails to Allege Facts Supporting Proximate
               Causation.......................................................................................15

           B.     The Challenged Elements of Fortnite, Grand Theft
                Auto V, and Call of Duty: Modern Warfare Are Not
                Products.........................................................................................16

           C.     Developer Defendants Do Not Owe Plaintiff a Legal
               Duty...............................................................................................19

           D.     Plaintiff Fails to Plead a Negligence Per Se Claim........................20

           E.     Plaintiff's Fraud-Based Claims Are Not Pleaded with
               Particularity ..................................................................................21

           F.     Plaintiff Fails to State Claims Under Other State Laws.................23

CONCLUSION .....................................................................................................................24

TABLE OF AUTHORITIES

Page(s)

Cases

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ...................................................................................................... 7

*ACLU of Ill. v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) ......................................................................................... 9

*Alioto v. Town of Lisbon*,
  2009 WL 3757005 (E.D. Wis. Nov. 6, 2009)............................................................. 17

*Allen v. American Cyanamid*,
527 F. Supp. 3d 982 (E.D. Wis. 2021)......................................................................... 12

*Am. Amusement Mach. Ass'n v. Kendrick*,
  244 F.3d 572 (7th Cir. 2001) ......................................................................................... 4

*Am. Booksellers Ass'n, Inc. v. Hudnut*,
  771 F.2d 323 (7th Cir. 1985) ..................................................................................... 1, 4

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) ....................................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 8

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
  282 F. Supp. 3d 1043 (N.D. Ill. 2017).......................................................................... 17

*Bannon v. Univ. of Chicago*,
  503 F.3d 623 (7th Cir. 2007) ....................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 24

*Bier v. Leanna Lakeside Prop. Ass'n*,
  305 Ill. App. 3d 45, 711 N.E.2d 773 (1999)................................................................. 21

*Bill v. Super. Ct.*,
  137 Cal. App. 3d 1002 (1982) ................................................................................. 8, 13

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011) ...............................................................................................Passim

## TABLE OF AUTHORITIES

Page(s)

*Cent. States, S.E. & S.W. Areas Pension Fund v. Midwest Motor Exp., Inc.*,
181 F.3d 799 (7th Cir. 1999) .................................................................................. 17

*Cohen v. Cowles Media Co.*,
501 U.S. 663 (1991) ..................................................................................... 11, 12

*Dames & Moore v. Baxter & Woodman, Inc.*,
21 F. Supp. 2d 817 (N.D. Ill. 1998) .......................................................................... 24

*Dietemann v. Time, Inc.*,
449 F.2d 245 (9th Cir. 1971) .................................................................................. 11

*Duffy v. Orlan Brook Condo. Owners' Ass'n*,
981 N.E.2d 1069 (Ill. App. Ct. 2012) ....................................................................... 23

*Ent. Software Ass'n v. Swanson*,
519 F.3d 768 (8th Cir. 2008) .................................................................................... 4

*Estate of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022)............................................... 2, 8, 14, 18

*Exelon Corp. v. Illinois Dept. of Revenue*,
876 N.E.2d 1081 (Ill. App. Ct. 2007) ....................................................................... 17

*Findlay v. Chicago Title Ins. Co.*,
215 N.E.3d 1006 (Ill. App. Ct. 2022) ....................................................................... 22

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140 ....................................................................................... 21

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ................................................................................... 15

*Green v. Miss United States of Am.*,
52 F.4th 773 (9th Cir. 2022) ................................................................................... 15

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ................................................................................................. 12

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) .............................................................................................. 13

TABLE OF AUTHORITIES

Page(s)

*In re Factor VIII or IX Concentrate Blood Prod. Litig.*,
25 F. Supp. 2d 837 (N.D. Ill. 1998) ...................................................................... 12

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,
2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ........................................................ 18

*Interactive Digital Software Ass'n v. St. Louis Cnty., Mo.*,
329 F.3d 954 (8th Cir. 2003) ......................................................................... Passim

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) ...................................................................... 17, 18

*Johnson v. Wal-Mart Stores, Inc.*,
588 F.3d 439 (7th Cir. 2009) ............................................................................ 15

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952) ........................................................................................... 6

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) .............................................................................. 3

*Marshall v. Burger King Corp.*,
856 N.E.2d 1048 (Ill. 2006) .............................................................................. 19

*Martinez v. Metabolife International, Inc.*,
113 Cal. App. 4th 181 (2003) ........................................................................... 12

*McCollum v. CBS, Inc.*,
202 Cal. App. 3d 989 (Cal. Ct. App. 1988) ......................................................... 15

*McCoy v. Iberdrola Renewables, Inc.*,
760 F.3d 674 (7th Cir. 2014) ............................................................................ 24

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) ............................................................................ 24

*Mktg. Tech. Sols., Inc. v. Medizine LLC*,
2010 WL 2034404,n.5 (S.D.N.Y. May 18, 2010) ................................................ 14

*NetChoice LLC v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022) .................................................................... 13, 14

TABLE OF AUTHORITIES

Page(s)

*Newsome v. Thompson*,
   560 N.E.2d 974 (Ill. App. Ct. 1990) ........................................................................ 16

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) .................................................................... 14

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) .................................................................................. 11

*Quinteros v. InnoGames*,
   2022 WL 898560 (W.D. Wash. Mar. 28, 2022) ........................................................ 18

*Richards v. U.S. Steel*,
   869 F.3d 557 (7th Cir. 2017) ................................................................................... 23

*Risenhoover v. England*,
   936 F. Supp. 392 (W.D. Tex. 1996) .......................................................................... 11

*Rogers v. Reagan*,
   823 N.E.2d 1016 (Ill. App. Ct. 2005) ....................................................................... 24

*Sanders v. Acclaim Ent., Inc.*,
   188 F. Supp. 2d 1264 (D. Colo. 2002) ...............................................................Passim

*Schmees v. HC1.COM, Inc.*,
   77 F.4th 483 (7th Cir. 2023) .................................................................................... 13

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................................................. 6

*Telescope Media Grp. v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) ............................................................................ 6, 9, 20

*United States v. Playboy Ent. Group, Inc.*,
   529 U.S. 803 (2000) ................................................................................................ 11

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) .................................................................................... 14

*Video Software Dealers Ass'n v. Schwarzenegger*,
   556 F.3d 950 (9th Cir. 2009) ..................................................................................... 4

TABLE OF AUTHORITIES

Page(s)

*Watters v. TSR, Inc.*,
715 F. Supp. 819 (W.D. Ky. 1989)......................................................................................4, 12

*Watters v. TSR, Inc.*,
904 F.2d 378 (6th Cir. 1990) ..............................................................................................4, 20

*Wendt v. Handler, Thayer & Duggan, LLC*,
613 F. Supp. 2d 1021 (N.D. Ill. 2009)....................................................................................22

*Wilson v. Midway Games, Inc.*,
198 F. Supp. 2d 167 (D. Conn. 2002)................................................................................Passim

*Woods v. Cole*,
693 N.E.2d 333 (Ill. 1998).......................................................................................................24

*Zamora v. C.B.S.*,
480 F. Supp. 199 (S.D. Fla. 1979)...............................................................................4, 15, 20

*Zhang v. Baidu.com, Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014) ......................................................................................14

Statutes

15 U.S.C. §§ 6502(d), 6504, 6505 ..........................................................................................21

735 Ill. Comp. Stat. Ann. 5/13-213.....................................................................................18, 19

**INTRODUCTION**

Plaintiff's Opposition urges this Court to defy binding precedent, staking out the extraordinary position that "[t]he First Amendment does not apply to bar . . . claims" targeting Developer Defendants' video games. Opposition Brief ("Opp'n") at 72. The Supreme Court has already rejected that argument, holding that video games are "as much entitled to the protection of free speech as the best of literature." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 796 n.4 (2011).

Plaintiff's Opposition ignores First Amendment law almost entirely. It attempts instead to draw a false distinction between a video game's "content" and its "features"—a distinction that no court has adopted. The First Amendment bars use of the courts and the specter of civil liability to chill and curtail the creative expression in Developer Defendants' video games, even if "their content purportedly affects the thought or behavior of those who play them." *Interactive Digital Software Ass'n v. St. Louis Cnty., Mo.*, 329 F.3d 954, 957 (8th Cir. 2003). But "disgust is not a valid basis for restricting expression," *Brown*, 564 U.S. at 798, and the Seventh Circuit has recognized that any such psychological impact "simply demonstrates the power of . . . [the] speech," *Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 328-30 (7th Cir. 1985) (striking down ordinance prohibiting the distribution of pornography that allegedly affected the "thoughts," "socialization," and "unconscious responses" of its recipients), *aff'd*, 475 U.S. 1001 (1986). To hold otherwise would have far-reaching ramifications for all forms of media, literature, arts, and entertainment. Developer Defendants, through their creation of *Fortnite*, *Call of Duty: Modern Warfare*, and *Grand Theft Auto V*, have accomplished what any game developer, or artist more generally, hopes to do: create content that reaches millions. Under *Brown*, the First Amendment protects that expressive endeavor.

For these and many other reasons, the Complaint fails:

*First*, the First Amendment forecloses Plaintiff's claims. The Supreme Court has squarely

- 1 -

held that video game "features" are protected by the First Amendment, *Brown*, 564 U.S. at 790, thus foreclosing Plaintiff's illusory distinction between content and features. To this end, Plaintiff's own allegations and argument repeatedly demonstrate that the challenged "features" are a type of video game "content," and are also inextricably intertwined with *other* expressive content. Despite the Complaint's derisive characterizations of "features" like so-called "feedback loops" and "monetization schemes," these labels describe interactive elements that make video games more engaging, personalized, and challenging—precisely the sort of "features distinctive to the medium" that *Brown* deemed protected. *See id.*

Even if there were a distinction between video game "features" and "content" for First Amendment purposes, Plaintiff expressly challenges "content." *E.g.*, Compl. ¶¶ 174, 192. Plaintiff also challenges "features" in Developer Defendants' games that she concedes are "content," such as "colors and cartoonish representation[s]," "game mechanics," "satisfying graphics and sounds," and "pictures, art, music, and 'interactive' features." Compl. ¶¶ 302, 281, 507, 763; Opp'n at 84-85. And Plaintiff's arguments regarding the supposedly unprotected nature of algorithms and artificial intelligence are unfounded. *See Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *2 n.3 (N.D. Cal. Jan. 12, 2022) (dismissing claim that algorithms manipulated viewers "into watching content" (internal quotation omitted)), *aff'd sub nom. Est. of Herndon v. Netflix, Inc.*, 2024 WL 808797 (9th Cir. Feb. 27, 2024)). Equally without merit is Plaintiff's claim that consideration of the First Amendment is premature on a motion to dismiss. *See, e.g.*, *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1279-81 (D. Colo. 2002) (dismissing claims against video game developers on First Amendment grounds); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 182 (D. Conn. 2002) (same).

*Second*, the Complaint does not allege facts supporting proximate cause. Instead, it alleges

facts that describe multiple, independent intervening acts that break any alleged causal chain. It is well established that intervening acts "of independent origin[s] that [are] not foreseeable" undermine any theory supporting proximate cause. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) (affirming dismissal where intervening acts defeated proximate cause).

*Third*, the Opposition recognizes that product liability law applies to "tangible" products only yet fails to explain how the content and features of *Fortnite*, *Call of Duty: Modern Warfare*, and *Grand Theft Auto V* could be "tangible," let alone refute the numerous cases holding that they are not. *See, e.g.*, *Wilson*, 198 F. Supp. 2d at 171-73, 181-82 (*Mortal Kombat* video game was "intangible" and not a "product").

*Fourth*, Plaintiff identifies no duty of care owed by Developer Defendants. Although the Opposition attempts to impute duties owed by product manufacturers, or even a general duty of ordinary care, those theories of liability are inapplicable to Developer Defendants, which do not manufacture products but instead create intangible, expressive works.

*Fifth*, Plaintiff cannot state a negligence per se claim for alleged violations of the Children's Online Privacy Protection Act ("COPPA"), Illinois Consumer Fraud and Deceptive Trade Practices Act ("Consumer Fraud Act"), or Illinois Uniform Deceptive Trade Practices Act ("Deceptive Practices Act"). Neither the Consumer Fraud Act or the Deceptive Practices are strict liability statutes—as required to support negligence per se—and COPPA contains an express preemption provision that precludes private rights of action. Plaintiff's claim thus fails.

*Sixth*, the Opposition does not identify a single fraud allegation stated with the particularity required by Rule 9(b). That failure proves fatal to every claim sounding in fraud.

*Finally*, Plaintiff's remaining state law claims fail for additional claim-specific reasons.

For these reasons, the Complaint should be dismissed with prejudice.

- 3 -

## ARGUMENT

### I.        The First Amendment Bars Each of Plaintiff's Claims

Video games are protected expression, and the First Amendment prohibits video game censorship, even if sought "solely to protect the young from ideas or images" that some consider "unsuitable[.]" *Brown*, 564 U.S. at 790, 795; *see* Defs.' Mem. Law Supp. Mot. Dismiss Pls.' Compl. ("Mot.") at 8-19. Numerous courts of appeal, including the Seventh Circuit, have applied this fundamental principle to bar claims or strike down statutes that would hold video game developers liable for the effects of their games on their players. *E.g.*, *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 577 (7th Cir. 2001); *Interactive Digital Software Ass'n*, 329 F.3d at 956-58; *Ent. Software Ass'n v. Swanson*, 519 F.3d 768, 772 (8th Cir. 2008); *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 965 (9th Cir. 2009). Characterizing expression as "addictive" does not in any way diminish the First Amendment's protection. *See, e.g.*, *Wilson*, 198 F. Supp. 2d at 182 (First Amendment barred claims alleging "the addictive power" of video game's features); *Watters v. TSR, Inc.*, 715 F. Supp. 819, 820 (W.D. Ky. 1989) (First Amendment barred negligence claims alleging minor became "totally absorbed by and consumed with" board game), *aff'd*, 904 F.2d 378 (6th Cir. 1990); *Zamora v. C.B.S.*, 480 F. Supp. 199, 200 (S.D. Fla. 1979) (First Amendment barred suit alleging minor became "addicted to" violent television); *Sanders*, 188 F. Supp. 2d at 1268, 1279-80 (First Amendment barred tort claims based on "fanatical and excessive" consumption of violent video games). To the contrary, the Seventh Circuit has recognized that any such psychological impact "simply demonstrates the power of . . . [the] speech." *Hudnut*, 771 F.2d at 328-30. "If the fact that speech plays a role in a process of conditioning were enough to permit governmental regulation, that would be the end of freedom of speech." *Id.* It is not, and the First Amendment requires dismissal of all of Plaintiff's claims.

### A. The Alleged "Defective Features" in Developer Defendants' Games Are Expressive Content Protected by the First Amendment

Confronted with binding First Amendment precedent, Plaintiff proposes an illusory distinction between a game's "content" and the alleged "features that make the games dangerously addictive." Opp'n at 80; *see also id.* at 72-86. The Opposition concedes, as it must, that "the First Amendment shields [Developer Defendants] from liability for harms stemming from the content of the video games at issue—namely, the 'ideas' and 'social messages' that the games communicate through their characters, dialogue, plots, narratives, pictures, art, music, and 'interactive' features." *Id.* at 84-85. But it insists that the Complaint somehow seeks to hold Developer Defendants liable only for "features" that allegedly make the games addictive and not for their "content." *Id.* at 80, 84-85. This tortured distinction is Plaintiff's sole justification to reject *Brown*, *Midway*, *Watters*, *Zamora*, and the rest. *Id.* at 79. The distinction fails for multiple reasons.

*First*, Supreme Court precedent rejects the distinction between a video game's "features" and "content" when it comes to the game's status as protected expression. The Supreme Court holds the opposite: that video games' "features" are protected by the First Amendment. *Brown*, 564 U.S. at 790. The *Brown* decision recognizes that "features distinctive to the medium," including features like the ones Plaintiff challenges here through which players "interact[] with the virtual world," are part of how "video games communicate ideas." *Id.* "[E]ver-advancing technology" and "new and different medium[s] for communication" do not vary the "basic principles of freedom of speech," which apply with full force to video game "features" and "content" alike. *Id.* at 790-91. The Supreme Court's precedent forecloses Plaintiff's argument.

*Second*, consistent with *Brown*'s recognition that video game "features" are expressive, Plaintiff offers no principled way to distinguish between "content" entitled to First Amendment protection and purportedly unprotected "features." To the contrary, Plaintiff's own allegations and

argument demonstrate the two are one and the same. For example, as Developer Defendants' motion to dismiss demonstrates, "rubber-banding" and "feedback loops" are expressive ways a developer tailors a game's level of difficulty to a player's skill. Mot. at 11 (citing Compl. ¶¶ 153, 179-188). A video game's ability to "react[] to how well [a] player is doing," to provide "a consistently challenging experience," and to prevent "bor[edom]," *id.* at ¶¶ 153, 179, 184, is precisely the sort of interactive feature "distinctive to the medium" contemplated in *Brown*, 564 U.S. at 790. When done well, an experience that is challenging but winnable "draws" a player "into" a game, *id.* at 798, "enhance[s] the player's experience," and makes a game more fun, engaging the player and extending the expressive power of the medium. *See* Compl. ¶ 187. While repeating the spurious claim that the Complaint does not target content, Plaintiff's Opposition doubles down on allegations regarding "'near miss,' effect[s], random rewards, bright and vibra[nt] colors, and continual gameplay variety," "social aspects," "numerous characters," "satisfying graphics and sound," and "exciting animation," *e.g.*, *id.* ¶¶ 130, 507, 741, 763; Opp'n at 12, 18, 72-73, all of which reflect literary and artistic choices that contribute to the "characters, dialogue, [and] plot," and in turn "communicate ideas" to the player. *Brown*, 564 U.S. at 790. These features build tension, add to enjoyment, and sustain excitement. In short, they are protected expression, notwithstanding that Plaintiff deems them *too* "engaging." Compl. ¶ 304; *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578 (2011) ("That the State finds expression too persuasive does not permit it to quiet the speech or to burden its messengers.").

The fact that features such as rubber-banding and feedback loops are elements distinctive to some video games in no way reduces their constitutional worth. "[W]hat matters . . . is that these" features "come together to produce finished" games "that are 'media for the communication of ideas.'" *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019) (quoting *Joseph*

*Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952)). As Developer Defendants' motion demonstrated, the "features" the Complaint targets *are* the tools artists, creators, and the like use to convey meaning. Mot. at 10. The First Amendment protects the "features distinctive to the medium" that video game developers use communicate their games' ideas, themes, and messages. *Brown*, 564 U.S. at 790; *compare, e.g.*, *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) (holding that "as with writing or painting, the tattooing process is inextricably intertwined with the purely expressive product (the tattoo), and is itself entitled to full First Amendment protection").

The same remains true for what the Complaint refers to as "monetization schemes," which permit players to buy content like "shortcuts," "special characters with unique skills," and "cosmetic items that can be used to customize characters or weapons." Compl. ¶¶ 141-142, 160. These game elements invite the player to "interact[] with the virtual world," *Brown*, 564 U.S. at 790, such as by offering "customization" options that players can buy or "earn" through in-game performance. Mot. at 11-12. *See also, e.g.*, Compl. ¶¶ 142, 305-306, 361, 370, 399. Plaintiff's Opposition makes no attempt to explain how aspects of a video game that foster player choice, expression, imagination, and creativity—such as unlockable weapon blueprints and soundtracks in *Call of Duty: Modern Warfare*, "a chance to 'drive' their dream car" in *Grand Theft Auto V*, and "customization rewards" in *Fortnite*, Compl. ¶¶ 289, 302, 369, 375, 389, 392-393, 399—are anything but the sort of "features distinctive to the medium" deemed protected in *Brown*, 564 U.S. at 790. Whether "earned" or purchased, these customization options are expressive and interactive ways that developers curate a game's theme and atmosphere. Mot. at 11-12. *See also 303 Creative LLC v. Elenis*, 600 U.S. 570, 594, 600 (2023) (First Amendment protects creative expression made with the "expectation of compensation").

*Third*, the challenged "features" are not only part of the game's expressive content but are also inextricably intertwined with the *other* indisputably expressive content they deliver and enhance—i.e., the characters, dialogue, plots, narratives, and other interactive features Plaintiff concedes are protected by the First Amendment. *See* Opp'n at 84-85. As Developer Defendants' motion demonstrated, there is nothing inherently engaging about "downloadable content" or "in-game purchases" without compelling content. Mot. at 12. The same goes for rubber banding, which Plaintiff alleges shows a player content available for purchase that "match[es] the player's desire and capacity to pay," Compl. ¶ 154—no player would have the desire to pay unless the content is attractive, *see* Mot. at 12. Common sense dictates that none of these "features" can plausibly be alleged to be addictive in isolation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (courts must "draw on [their] judicial experience and common sense" in evaluating claims' plausibility); *see also Estate of B.H.*, 2022 WL 551701, at *3 ("[P]laintiffs' efforts to distance the claims from the content of the show do not persuade."). Rather, it is Developer Defendants' expressive, artistic, and literary decisions to make these design choices in combination with other engaging content that Plaintiff contends "keep[s] [players] hooked *in the content*," Compl. ¶ 193 (emphasis added)— a theory the First Amendment squarely forecloses. "[W]ithout the content, there would be no claim." *Estate of B.H.*, 2022 WL 551701, at *3; *see also Bill v. Super. Ct.*, 137 Cal. App. 3d 1002, 1007 (1982) (barring claim against movie theater because it sought "to impose liability on the basis of the [movie's] content").

Courts have repeatedly rejected similar attempts to undermine First Amendment protections by dividing artistic works into protected expressive and unprotected non-expressive components. In *Interactive Digital Software Association*, the Eighth Circuit rejected a purported distinction between "the expressive parts of the game," such as its "story lines," and the player-

controlled, interactive portions of the game. 329 F.3d at 957 ("[T]here is no justification for disqualifying video games as speech simply because they are constructed to be interactive[.]"). More recently, in *ACLU of Ill. v. Alvarez*, the Seventh Circuit explained that the First Amendment protects the provision of "integral" inputs that "*facilitate*[]" content creation, just as much as the resulting expression. 679 F.3d 583, 595-97 (7th Cir. 2012). No amount of jargon and disparaging labels can overcome this deficiency: "[s]peech is not conduct just because [plaintiff] says it is." *Telescope Media Group*, 936 F.3d at 752 (rejecting argument that "producing a video" is conduct because it "requires several actions that . . . come together to produce finished videos that are media for the communication of ideas" (internal quotation marks omitted)).

*Fourth*, even if there were any difference in the protection that the First Amendment provides to a video game's "features" and its "content" (there is not), the Complaint alleges Developer Defendants are liable for their games' content. Contrary to what Plaintiff suggests in her Opposition, her Complaint expressly targets content, faulting Developer Defendants for "continuously adding new game *content*," Compl. ¶¶ 174 (emphasis added), and "constantly adding downloadable *content*" that "keeps [players] hooked in the *content and the game*," *id.* ¶ 193 (emphasis added). On Plaintiff's own terms, her assertion that the Complaint does "not target[] the [Developer] Defendants' ideas or content" is wrong. Opp'n at 75.

Even where the Complaint does not expressly use the term "content," it targets "features" that fall into categories that Plaintiff admits are content. Plaintiff's Opposition argues that the games' "defective features" are not protected content because Developer Defendants could "address these [alleged] defects without changing anything about the content of the games at issue—i.e., without changing any of the ideas and messages expressed through the games' . . . *pictures, art, music, and other interactive features*[.]" Opp'n at 85 (emphasis added).

- 9 -

But the Complaint and even the Opposition itself show that Plaintiff targets precisely the "pictures, art, music, and other interactive features" she concedes are protected. *See id.*

For example, Plaintiff contends that "Fortnite is . . . addictive because of the *video game graphics*, . . . and *game mechanics*." Opp'n at 19 (emphasis added); *see also* Compl. ¶ 281. Graphics are the images and visual elements that appear in a video game. In *Fortnite*'s case, they include "cartoonish [imagery] with bright and vibrant colors—to keep users drawn into the game[.]" Opp'n at 19. Game mechanics are the rules and systems by which a player interacts in a video game. In *Fortnite*'s case, the game mechanics "allow[] players to find ideal hiding spots, loot drops, explore the entire map world, [and] build towers and forts using resources[.]" *Id.* at 19. Plaintiff thus claims that *Fortnite* is addictive because of its "pictures, art, . . . and 'interactive' features"—the very features that Plaintiff admits are "content" entitled to First Amendment protection. *Id.* at 85.

As another example, Plaintiff argues that *Call of Duty: Modern Warfare* is "extremely addicting to players" because of so-called "feedback loops" in which users "earn extra game *content*" and its "*fast-paced play, satisfying graphics,* [and] *sounds.*" Opp'n at 12 (emphasis added); *see also* Compl. ¶ 362. Likewise, Plaintiff claims *Grand Theft Auto V* is designed to "hook users" with "addictive measures" such as its "impressive graphics, [and] captivating storyline," "free *content*," *id.* at 15-16 (emphasis added), and "downloadable *content* available for purchase in the game," Compl. ¶ 401 (emphasis added). By Plaintiff's own reasoning, these games' storyline, pace of play, graphics, and sounds are constitutionally protected *content*. Opp'n at 85 (conceding the First Amendment protects content "expressed through the games' characters, dialogue, plots, narratives, pictures, art, music, and 'interactive' features").

Plaintiff's Opposition offers no explanation as to how Epic could "fix" *Fortnite*, Activision

- 10 -

could "fix" *Call of Duty: Modern Warfare*, or Rockstar could "fix" *Grand Theft Auto V* "without changing any content at all." Opp'n at 46, 80, 87. To the contrary, as the allegations regarding *Fortnite*, *Call of Duty: Modern Warfare*, and *Grand Theft Auto V* demonstrate, Plaintiff's claims turn on her contention that Developer Defendants should each have designed a different, less engaging game. This is akin to arguing that a novelist should be forced to rewrite her novel, a filmmaker re-cut her movie, or a musician revise her score, all with the objective of making the media less engaging to consumers. This is not only illogical but violates the core artistic and aesthetic expression that the First Amendment protects. *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 818 (2000) ("[E]sthetic and moral judgments about art and literature . . . [are] not for the Government to decree."). Thus, even taking Plaintiff's illusory "content" versus "features" distinction at face value, her claims still fail for seeking to impose liability based on content.

*Fifth*, the few cases Plaintiff's Opposition cites do not compel or even suggest a different conclusion. None involve video games or comparable facts. Plaintiff relies instead on a line of cases regarding misconduct by journalists in their investigative process. Opp'n at 75-77. Taken together, these cases stand for the uncontroversial principle that "journalists must obey laws of general applicability" when gathering and reporting news. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) (journalists liable for conduct that included "forging signatures, creating and procuring fake driver's licenses, and breaching contracts"); *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 670 (1991) (journalist liable for identifying confidential source despite promise not to); *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (similar); *Risenhoover v. England*, 936 F. Supp. 392, 405 (W.D. Tex. 1996) (similar). Not only are these cases factually inapposite, but they do not apply where, as here, it is "the content of publications that would trigger liability" under Plaintiff's theory. *Cohen*, 501 U.S. at 670; *see also,*

*e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) (holding that "generally applicable law[s]" trigger the First Amendment where they are "directed at [a defendant] because of what [their] speech communicated"). Far from having a mere "incidental" effect on speech, as was the case in *Cohen* and the cases following it, the Complaint is aimed squarely at Developer Defendants' expression. *See, e.g.*, Compl. ¶¶ 153, 174, 179, 184, 192-193, 304, 362, 401, 507.

The Opposition relies on two product liability cases that are similarly unavailing. Opp'n at 81. In *Allen v. American Cyanamid*, a paint manufacturer sought to invoke the First Amendment to bar product liability claims concerning its production of paint. 527 F. Supp. 3d 982, 994 (E.D. Wis. 2021). In *Martinez v. Metabolife International, Inc.*, a supplement manufacturer moved to strike, on First Amendment grounds, a product liability complaint alleging that its diet pills were defective. 113 Cal. App. 4th 181, 188 (2003). The First Amendment did not bar liability in these cases because plaintiffs did not seek to hold the defendants liable for expressive speech; both courts concluded that plaintiffs alleged defects in tangible products that made the products unreasonably dangerous. *See Martinez*, 113 Cal. App. 4th at 189; *Allen*, 527 F. Supp. 3d at 994. There is no such distinction to be drawn here. Video games, a form of expressive media with inherent literary, artistic, and creative qualities, are fundamentally unlike paint or diet supplements, which have no such qualities. And unlike paint and pills (which are tangible objects of a fixed nature), video games are not even "products." *See infra* § II.B. These authorities do not provide any basis under the First Amendment for Plaintiff's claimed distinction between video game "features" and "content."[1]

---

[1] The same goes for Plaintiff's citation to *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 25 F. Supp. 2d 837, 848 (N.D. Ill. 1998), for the proposition that the First Amendment does not bar her failure to warn claims. Opp'n at 83. The court there addressed defendant's argument that it had a First Amendment right *not* to speak—a theory that would, as the court observed, entirely obviate failure to warn liability. *See In re Factor VIII*, 25 F. Supp. 2d at 848. The court's narrow

**B.** **None of Plaintiff's Other Arguments Overcome the First Amendment**

Plaintiff contends *Fortnite*, *Grand Theft Auto V*, and *Call of Duty: Modern Warfare* are not protected expression because Developer Defendants have not "attempt[ed] to articulate the 'ideas' and 'messages'" that they "communicated" through their games. Opp'n at 85. But Developer Defendants need not reduce the artistic choices in their games to an articulable "idea" or "message." As the Supreme Court has held, "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). If the First Amendment applied only to "particularized message[s]," it "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Id.* (internal quotations and citation omitted).

The Opposition's emphasis on Developer Defendants' alleged use of artificial intelligence ("A.I.") or algorithms is likewise misguided. *See* Opp'n at 9-11, 13, 16-17, 20, 60, 62. The Complaint makes only two references to A.I., Compl. ¶ 176, 640, and includes only a handful of unspecific references to algorithms, none tethered to a particular defendant or game, *see id.* ¶¶ 120, 137, 150, 174-175, 698, 729, 772, 854. Even if Plaintiff could now transform these sporadic and generalized references into a cornerstone of their theory, the First Amendment protects "expressive" "judgments" executed through "algorithms." *NetChoice LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1205-06, 1212 (11th Cir. 2022) *cert. granted in part sub nom. Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023); *see also Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) ("It will rarely be appropriate" for a court "to treat new claims presented for the first time in briefing as a constructive motion to amend."). Plaintiff's own authority recognizes that "computer

---

rejection of that theory does not alter the long line of cases holding that the First Amendment does bar claims that a defendant failed to warn about the alleged danger of expression. *E.g.*, *Bill*, 137 Cal. App. 3d at 1006-07 (First Amendment barred claims that film producers had duty to warn that violence might occur at theaters showing the film); *Watters*, 715 F. Supp. at 822 n.1 (similar).

code conveying information is 'speech' within the meaning of the First Amendment." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449-50 (2d Cir. 2001). Plaintiff's claims here target the expressive, interactive output of that code: the way the code manifests in the Developer Defendants' game designs, graphics, sounds, themes, stories, and other information. *E.g.*, Compl. ¶¶ 302, 362, 391, 507, 741.

In arguing that "[m]any of the defective features involve decisions made by algorithms, not humans," Opp'n at 85, the Opposition misunderstands how algorithms work. Algorithms are not autonomous and do not "make decisions." Algorithms—"a prescribed set of well-defined, unambiguous rules or processes for the solution of a problem in a finite number of steps," *Mktg. Tech. Sols., Inc. v. Medizine LLC*, 2010 WL 2034404, at *4 n.5 (S.D.N.Y. May 18, 2010)—"are written by human beings" and "inherently incorporate" and apply human "judgments," *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014). The First Amendment protects their outputs, as it does any other creative judgment. *See, e.g.*, *NetChoice*, 34 F.4th at 1205-06, 1212 (First Amendment protects algorithms used to select and arrange content); *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1187 (N.D. Cal. 2022) (collecting cases holding same), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023). In video games, these rules or processes are written, tested, and re-written by human game designers, whose critical creative choices define a game's expressive content, including its mechanics, graphics, sounds, and interactive elements. As *Brown* definitively established, decisions about video game elements are creative expression protected by the First Amendment. 564 U.S. at 790; *see also Estate of B.H.*, 2022 WL 551701, at *2 n.3, 3 (dismissing claim that algorithms manipulated viewers "into watching content" because "[w]ithout the content, there would be no claim" (internal quotation marks omitted)).

Finally, the argument that the First Amendment is an affirmative defense that cannot be

resolved on the pleadings is meritless. Opp'n at 71-72. The First Amendment confers a right "not just to speak, but to be free of protracted speech-chilling litigation," which is why "federal courts have emphasized the importance of resolving First Amendment cases at the earliest possible junction." *Green v. Miss United States of Am.*, 52 F.4th 773, 793, 800 (9th Cir. 2022). Courts around the country have found it particularly important to dispose of claims targeting video games and other expressive media at the pleading stage to avoid stifling protected speech. *E.g.*, *Wilson*, 198 F. Supp. 2d at 179-83 (granting motion to dismiss on First Amendment grounds); *Zamora*, 480 F. Supp. at 207 (same); *Sanders*, 188 F. Supp. 2d at 1279-82 (same); *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 1000-03 (Cal. Ct. App. 1988) (same). Plaintiff's reliance on *G.G. v. Salesforce.com, Inc.* is misplaced as that case did not involve the First Amendment. 76 F.4th 544, 566 (7th Cir. 2023). Even then, the *G.G.* court stated that dismissal is warranted "if the factual allegations in the complaint unambiguously establish all the elements of the defense," as they do here. *Id.* Plaintiff identifies no factual development that would affect the First Amendment analysis. *See id.* at 71-72, 96 n.36. Nor could she. The Complaint makes clear—and Plaintiff's Opposition even clearer—that Plaintiff's claims target protected expression. Dismissal is therefore necessary. *See* Mot. at 8-19.

## II. Plaintiff's Claims Fail for Multiple Other Reasons

### A. Plaintiff Fails to Allege Facts Supporting Proximate Causation

"[A] proximate cause is one that produces an injury through a natural and continuous sequence of events *unbroken by any effective intervening cause*." *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (emphasis added). To argue that intervening acts do not break causation here, Plaintiff relies on conclusory allegations, *see, e.g.*, Compl. ¶ 19 (Defendants' "acts proximately caused D.G.'s gaming addition"), and articles that speculate on Internet Gaming Disorder, *see* Opp'n at 8. The Opposition further argues that Angelilli could not have "ma[d]e an

- 15 -

informed decision about allowing D.G." to play video games because she could not have learned of the alleged risks posed by excessive gaming. Opp'n at 67. These arguments fail as a matter of law.

The lack of specificity regarding *how* Developer Defendants allegedly harmed D.G. precludes Plaintiff from plausibly pleading proximate cause here. Mot. at 20-21. That is because the sparse allegations regarding D.G.'s actual injuries do not identify crucial information, including when D.G. allegedly began to play each of Developer Defendants' games, how long D.G. has played each game, or when D.G. began to suffer the alleged harms. Without this information, it is impossible to infer—even at the pleading stage[2]—the requisite causal link for Plaintiff's claims.

The Complaint describes multiple independent intervening conditions that break the alleged causal chain. Chief among them is that D.G. suffers from several ailments, including anxiety, depression, ADHD, and oppositional defiant disorder. Compl. ¶¶ 20, 269. And, as discussed in the motion, courts defer to the intervening supremacy of parental decision making. *See* Mot. at 21-22. For these reasons, and the many others described in Developer Defendants' motion, Plaintiff fails to allege facts supporting proximate causation.

> **B.      The Challenged Elements of *Fortnite*, *Grand Theft Auto V*, and *Call of Duty: Modern Warfare* Are Not Products**

Plaintiff's Opposition fails to rebut Developer Defendants' showing that *Fortnite*, *Grand Theft Auto V*, and *Call of Duty: Modern Warfare* are not subject to Illinois product liability law because (i) they are not "tangible" objects or goods; and (ii) they are not objects of a "fixed

---

[2] Contrary to Plaintiff's contention that proximate causation is a question of fact, proximate causation is "a question of law where reasonable men could not differ as to the inferences to be drawn from undisputed facts." *Newsome v. Thompson*, 560 N.E.2d 974, 979 (Ill. App. Ct. 1990).

nature."[3]

Plaintiff's Opposition entirely ignores Developer Defendants' argument that video games are not objects of a "fixed nature" within the scope of Illinois product liability law. (Mot. at 23.) This failure to respond is "enough to dismiss the claim[s] by itself." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017); *see also, e.g.*, *Cent. States, S.E. & S.W. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."); *Alioto v. Town of Lisbon*, 2009 WL 3757005, at \*5 (E.D. Wis. Nov. 6, 2009) (dismissing claim because plaintiff failed to respond to defendants' motion to dismiss arguments), *aff'd*, 651 F.3d 715 (7th Cir. 2011).

With respect to tangibility, Plaintiff's Opposition concedes that product liability law only applies to "tangible object[s] or goods." Opp'n at 39-40. It also acknowledges that Illinois courts have, in other contexts, defined "tangible" to mean "[c]apable of being touched; also, perceptible to the touch; tactile; palpable." *Id.* at 40 (quoting *Exelon Corp. v. Illinois Dept. of Revenue*, 876 N.E.2d 1081, 1084 (Ill. App. Ct. 2007)). In an attempt to meet this tangibility requirement, Plaintiff asserts that "[e]ach video game can be purchased in hard copy." *Id.* at 41. But D.G. is not alleged to have played hard copies of Developer Defendants' video games, *see* Compl. ¶¶ 29-31, and, regardless, Plaintiff's alleged injuries arise from the intangible, communicative content of the games, not any physical harm caused by a "hard copy" disc. *See James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (distinguishing intangible content from a video cassette that "explode[s] and injure[s] the user").

Here, the Opposition again relies on the supposed distinction between "content" and

---

[3] The product liability claims are Counts I (strict liability-design defect), II (strict liability-failure to warn), III (strict liability-failure to instruct), IV (negligence-design), V (negligence-failure to warn), and VI (negligence-failure to instruct).

"features." But the distinction is especially irrelevant in the context of product liability. The allegedly "defective features," such as "microtransactions, loot boxes, rubber-banding schemes, and other patented technologies," Opp'n at 42, are not properties of a physical object that are "capable of being touched," *id*. at 40. They describe intangible media to which strict product liability does not apply. Likewise, Plaintiff's reliance on *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2023 WL 7524912, at *31 (N.D. Cal. Nov. 14, 2023), is misplaced. (Opp'n at 40, 41 n.28.) The court there expressly limited its product liability holding to alleged defects that it reasoned did not "pertain to ideas, thoughts, and expressive content." *Id.* (quoting *James*, 300 F.3d at 701). Whether or not the *In re Social Media* district court correctly applied this rule, no such distinction can be drawn in this case because the challenged aspects of *Fortnite*, *Grand Theft Auto V*, and *Call of Duty: Modern Warfare* are protected, expressive content.

Tellingly, Plaintiff's Opposition does not acknowledge, let alone try to distinguish, the many authorities holding that video games are not "products." *See, e.g.*, *Sanders*, 188 F. Supp. 2d at 1279 (video games are "not 'products'"); *Wilson*, 198 F. Supp. 2d at 171-73, 181-82 (*Mortal Kombat* video game not a "product"); *Estate of B.H.*, 2022 WL 551701, at *3 ("There is no strict liability for books, movies, or other forms of media.").[4] Nor does it offer any authority holding that a video game is a tangible product—and Developer Defendants are aware of none. Plaintiff's attempt to plead "tangibility" fails in the face of the extensive precedent to the contrary.

Plaintiff's reliance on 735 Ill. Comp. Stat. Ann. 5/13-213 confirms that a good must be

---

[4] Plaintiff attempts to distinguish *Quinteros v. InnoGames* by asserting that the allegations "were unlike those in the instant matter." Opp'n at 46 n.30. This is untrue. Like Plaintiff here, the *Quinteros* plaintiff alleged that defendants' video game "is psychologically addictive and that she became psychologically dependent or addicted." *Quinteros v. InnoGames*, 2022 WL 898560, at *1 (W.D. Wash. Mar. 28, 2022), *aff'd on other grounds*, 2024 WL 132241 (9th Cir. Jan. 8, 2024). But even if the allegations were different, it would not change the fact that video games are not products as a matter of law. *Id.* at *7 (granting motion to dismiss product liability claims).

"tangible" to be a product under Illinois law. *See* Opp'n at 40-42. As an initial matter, the provision merely sets out the "statute of repose" for strict product liability actions. The definitions therein are limited to that context and do not substantively define the scope of product liability actions generally. *See* 735 Ill. Comp. Stat. Ann. 5/13-213(a) (the definitions apply only "[a]s used in this Section"); *id.* 5/13-213(f) (the statute "shall not be construed to create a cause of action"). But even if the statute applied beyond setting the specified limitations periods, its definition confirms that an object must be "tangible" to qualify as a "product" under Illinois law. *Id.* 5/13-213(a)(2). And while that definition also includes "any service provided in connection with the product," the only "product" Plaintiff claims *Fortnite*, *Grand Theft Auto V*, and *Call of Duty: Modern Warfare* are "provided in connection with" are the games themselves. Opp'n at 41. Such circular reasoning does not bring Developer Defendants' intangible video game services within the ambit of 735 Ill. Comp. Stat. Ann. 5/13-213's definition of a "product."[5]

### C. Developer Defendants Do Not Owe Plaintiff a Legal Duty

As Plaintiff concedes, duty is an essential element of any negligence claim. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006) ("a cause of action for negligence" requires "the existence of a duty of care owed by the defendant to the plaintiff"). Because Developer Defendants owe no duty in tort, Plaintiff's negligence-based claims fail.[6]

Plaintiff argues that manufacturers of "products" owe duties to those who use them. Opp'n

---

[5] Plaintiff's Opposition also asserts that, because 735 Ill. Comp. Stat. Ann. 5/13-213 applies only to strict product liability claims, her negligence-based product liability claims do not require tangibility. Opp'n at 46-47. The Opposition proffers no authority for this proposition, nor does it explain what alternative definition of product would apply to Plaintiff's negligence-based claims. In any event, "tangibility" is required in negligence-based product liability claims, too. *See Wilson*, 198 F. Supp. 2d at 172-74 (dismissing claim that video game was "negligently and/or intentionally designed" because game was not "tangible" product).

[6] The negligence claims are Counts IV (negligence-design), V (negligence -failure to warn), VI (negligence-failure to instruct), VIII (negligence-ordinary), IX (gross negligence), XI (negligent infliction of emotional distress), and XVII (negligent misrepresentation).

at 48-49. But video games are not "products." And even if they were, this argument fails to engage with the many cases in which courts found no duty in similar circumstances. *See* Mot. at 27-28. Plaintiff relies on her false distinction between the content of Developer Defendants' games and the games' development, arguing that Developer Defendants owe a duty of care because of the games' "design." Opp'n. at 48. But, as discussed above, the design of a game cannot be separated from its content. *Cf. Telescope Media Group*, 936 F.3d at 752 (rejecting similar argument that attempted to disaggregate "producing a video" into "several actions that, individually, might be mere conduct"). Developing a video game *is* designing the game's content—it includes, among other things, developing "scripts and story boards," "storyline," "character," "narrative," "music," "dialogue," "pictures, graphics design, concept art, [and] sounds." *Interactive Digital Software Ass'n*, 329 F.3d at 957. And, as explained in Developer Defendants' motion to dismiss, courts routinely dismiss claims asserting that game designers and other content developers owe duties to their audiences because such a duty would chill protected speech. *See, e.g.*, *Zamora*, 480 F. Supp. at 206 (no duty owed by television broadcasters to child who replicated acts seen on TV); *Watters*, 904 F.2d at 379 (no duty owed to child who allegedly suffered "psychological harm" from playing board game); *Sanders*, 188 F. Supp. 2d at 1264 (no duty owed by video game publishers for injuries allegedly caused by games' content).

### D. Plaintiff Fails to Plead a Negligence Per Se Claim

As the Opposition concedes, "[a] violation of a statute only constitutes negligence per se (which would mean strict liability) if the legislature clearly intends for the act to impose strict liability." Opp'n at 49 (quoting *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 28 (affirming dismissal of negligence per se claim)). Plaintiff fails to meet this standard. She concludes without caselaw or analysis that "legislative bodies intended for companies who violate [COPPA, the Consumer Fraud Act, and the Deceptive Practices Act] to be 'strictly liable' for those violations."

- 20 -

Opp'n at 50. But, as Developer Defendants demonstrated in their motion, the Consumer Fraud Act and the Deceptive Practices Act are not strict liability statutes because each requires intent. Mot. at 28. Plaintiff does not respond to this argument. In addition, while a statute must be designed to protect "human life or property" for its violation to support "prima facie evidence of negligence," "negligence per se [is established] when the plaintiff shows the violation of a statute *designed to protect human life*." *Bier v. Leanna Lakeside Prop. Ass'n*, 305 Ill. App. 3d 45, 58-59, 711 N.E.2d 773, 783 (1999) (emphasis added). Plaintiff offers no response to this distinction, nor does she explain how COPPA, the Consumer Fraud Act, or the Deceptive Practices Act are designed to protect human life. Plaintiff's negligence per se claim fails for these reasons. Lastly, Developer Defendants showed that COPPA prohibits private enforcement, a fact that Plaintiff seemingly concedes. *See* Opp'n at 50 (stating that "it is the government, rather than plaintiffs, who can impose those fines for purposes of Plaintiffs' negligence per se claim"); *see also* 15 U.S.C. §§ 6502(d), 6504, 6505. Plaintiff's negligence per se claim fails for all these reasons.

### E. Plaintiff's Fraud-Based Claims Are Not Pleaded with Particularity

The Opposition further confirms that Plaintiff fails to state her fraud claims with the particularity required by Rule 9(b).[7] The Opposition relies heavily on Plaintiff's allegation that Epic described *Fortnite* as "educational." But the allegations in the Complaint are simply that "Epic Games touts Fortnite as 'educational' and markets it for use in the classroom" and that Epic's website "offers 'Free Fortnite lesson plans' to educators on subjects ranging from history, geography, and programming." Compl. ¶¶ 310-11. Plaintiff does not allege when, where, or if she saw these representations, why the representations are false, or how the representations affected

---

[7] The fraud claims are Counts XIV (fraudulent misrepresentation), XV (fraudulent misrepresentation and concealment), XVI (fraudulent inducement), and XVII (negligent misrepresentation).

her or D.G. *See Findlay v. Chicago Title Ins. Co.*, 215 N.E.3d 1006, 1023 (Ill. App. Ct. 2022) (a fraudulent misrepresentation claim includes "a false statement of material fact," "defendant's knowledge or belief that the statement was false," "defendant's intent that the statement induce the plaintiff to act," "plaintiff's justifiable reliance upon the truth of the statement;" and "damages resulting from reliance on the statement."). Plaintiff also fails to allege that she or D.G. relied on statements about *Fortnite* being "educational," as required to state an affirmative misrepresentation claim. *Id*. Unable to cite allegations in the Complaint, Plaintiff instead claims that *Fortnite* cannot be educational because "D.G. now requires private tutoring and a 404 plan to navigate an educational setting." Opp'n at 56. D.G.'s current educational status says nothing about when, where, or what Epic allegedly said, why it was false, whether or how it was relied on, or how it allegedly affected D.G. The Opposition also tries to paper over Plaintiff's failure to identify any particular affirmative statement Activision or Rockstar allegedly made. Generically asserting all Defendants represented "their video game products as safe" "everywhere and always," *id.* at 55, is insufficient to state a fraud claim with particularity.

Plaintiff also does not identify any statement by Developer Defendants to support her fraudulent concealment or fraudulent inducement claims. She pastes paragraphs from the Complaint into her brief but fails to explain how these undifferentiated allegations against multiple defendants can satisfy the requirement to plead fraud with particularity when the allegations fail to identify specific misstatements or omissions by specific defendants. *See Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1034 (N.D. Ill. 2009) (a complaint "pleaded in a conclusory fashion devoid of particulars surrounding the alleged fraud" does not satisfy "Rule 9(b)'s particularity requirement"). The Opposition confirms that Plaintiff's lumped-together allegations are vague to the point of meaninglessness—arguing, for instance, that "[t]he 'where'

- 22 -

and 'when'" of her undifferentiated allegations against all Developer Defendants "is everywhere and always." Opp'n at 55. Plaintiff's fraud claims must be dismissed.

### F. Plaintiff Fails to State Claims Under Other State Laws

#### 1.    The Intentional Infliction of Emotional Distress Claim Fails

Plaintiff similarly cannot defend her intentional infliction of emotional distress ("IIED") claim. To state an IIED claim, a plaintiff must allege conduct so "extreme and outrageous" that it "go[es] beyond all possible bounds of decency and [is] regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). Plaintiff attempts to meet that standard by claiming that Developer Defendants *intended* for their games to cause harm. *See* Opp'n at 52-53. But Plaintiff pleads *no* facts to support that claim. And Plaintiff's theory is inconsistent with the allegation that Developer Defendants' games are played *without* widespread harm by hundreds of millions of people. *See, e.g.*, Compl. ¶ 290 ("Fortnite has an average of 239 million monthly players"). Even if Plaintiff's allegations had any merit (they do not), Plaintiff fails to cite any case in which an IIED claim survived on similar or analogous facts. The allegations thus fail to reach Illinois's high bar of extreme and outrageous conduct. *See*, *e.g.*, *Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007) (plaintiff's boss use of racial slurs not outrageous); *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1080 (Ill. App. Ct. 2012) (causing plaintiff's condominium to be uninhabitable, which adversely affected plaintiff's dementia, not outrageous).

#### 2.    The Civil Conspiracy and In-Concert Liability Claims Fail

Finally, Plaintiff concedes that a civil conspiracy requires showing an underlying unlawful purpose or means. Opp'n at 60-61. The same is required for in-concert liability. *Rogers v. Reagan*, 823 N.E.2d 1016, 1020 (Ill. App. Ct. 2005) (requiring "a tortious act in concert with [an]other"). There is no underlying unlawful purpose or means here. Plaintiff also fails to plausibly allege

another crucial element of either claim: a "meeting of the minds" that suggests an "agreement" to pursue an "unlawful purpose." *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 824 (N.D. Ill. 1998); *Woods v. Cole*, 693 N.E.2d 333, 337 (Ill. 1998) (in-concert liability requires "a mutual agency, so that the act of one is the act of all"). While the Complaint includes conclusory allegations, it does not allege any facts that allow a reasonable inference that any such meeting of the minds occurred. *Compare* Compl. ¶ 78 ("Upon information and belief, [Defendants] all acted in concert and entered into licensing agreements to utilize the same patents to keep users, including minors like D.G., addicted to Defendants' video games"), *with McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) ("[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Plaintiff's conspiracy and in-concert liability claims fail.

## CONCLUSION

For these reasons and those set forth in their moving papers, Developer Defendants respectfully request that, to the extent it does not compel arbitration, the Court dismiss the Complaint with prejudice as any amendment would be futile. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss.").

Dated: June 14, 2024

Respectfully submitted,

**SWANSON MARTIN & BELL LLP**

Michael A. McCaskey
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-8464
Email: mmccaskey@smbtrials.com

- AND -

**HUESTON HENNIGAN LLP**

Moez M. Kaba*
Allison L. Libeu*
Padraic Foran*
523 West 6th St., Suite 400
Los Angeles, California 90014
(213) 788-4340
Email: mkaba@hueston.com
        alibeu@hueston.com
        pforan@hueston.com

Adam Minchew*
1 Little West 12th St.
New York, New York 10014
(646) 930-4046
Email: aminchew@hueston.com

* Admitted *pro hac vice*

*Attorneys for Defendant Epic Games, Inc.*

**KING & SPALDING LLP**

Geoffrey M. Drake*
TaCara Harris*
1180 Peachtree St., NE, Suite 1600
Atlanta, GA 30309
(404) 572-4600

David P. Mattern*
Paul Weeks*
1700 Pennsylvania Avenue, NW, Suite 900

- 25 -

Washington, DC 20006
(202) 737-0500

Julia Zousmer (IL Bar # 6325189)
110 N. Upper Wacker Dr., Suite 3800
Chicago, IL 60606
(312) 995-6333

\* Admitted *pro hac vice*

*Attorneys for Defendants Activision Blizzard,
Inc., Infinity Ward, Inc., Treyarch Corp., and
Sledgehammer Games, Inc.*


**NEAL, GERBER & EISENBERG LLP**
Lee J. Eulgen
leulgen@nge.com
Tonya G. Newman
tnewman@nge.com
2 N. LaSalle St. Suite 1700
Chicago, IL 60602
Phone: (312) 269-8000

- AND -

**MITCHELL SILBERBERG & KNUPP
LLP**
Karin G. Pagnanelli (*Pro Hac Vice*)
kgp@msk.com
Marc E. Mayer (*Pro Hac Vice forthcoming*)
mem@msk.com
Gabriella N. Ismaj (*Pro Hac Vice*)
gan@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Tel: (310) 310-2000
Fax: (310) 312-3100

*Attorneys for Defendants Take-Two
Interactive Software, Inc., Rockstar Games
UK Ltd. (erroneously named as Rockstar
North Limited), and Rockstar Games, Inc.*

- 26 -

- 27 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that an exact copy of the foregoing was filed electronically with the Clerk of the United States District Court, Northern District of Illinois, through CM/ECF system, which will send electronic notification to each of the counsel of record herein on this 14th day of June 2024.

*/s/ Michael A. McCaskey*