UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACLYN ANGELILLI, individually and on behalf of D.G., a Minor; </br></br>Plaintiffs,</br></br>v.</br></br>ACTIVISION BLIZZARD, INC.; INFINITY WARD, INC.; TREYARCH CORP.; SLEDGEHAMMER GAMES, INC.; EPIC GAMES, INC.; ROBLOX CORP.; ROCKSTAR NORTH LTD.; ROCKSTAR GAMES, INC.; TAKE-TWO INTERACTIVE SOFTWARE, INC.; SONY INTERACTIVE ENTERTAINMENT LLC; NINTENDO OF AMERICA, INC.; GOOGLE LLC; and APPLE, INC.;</br></br>Defendants. | No. 23-cv-16566</br></br>Judge April M. Perry |

**OPINION AND ORDER**

Plaintiff Jaclyn Angelilli brought this case individually and on behalf of her minor son, D.G., against numerous developers of video games, gaming consoles, and online sales platforms (collectively, "Defendants"). The thrust of Plaintiffs' complaint is that D.G. began playing video games when he was six years old and at some point became addicted. Plaintiffs further allege that D.G.'s gaming has resulted in serious harm, including emotional distress, lost friends, and problems in school. When his mother tries to limit his video gaming, Plaintiffs claim that D.G. experiences withdrawal symptoms such as rage and physical outbursts that leave his mother fearful and distressed.

This opinion resolves the motion to dismiss filed by Defendants Google LLC ("Google") and Apple, Inc. ("Apple").[1] The Court also issues today its separate opinion resolving the motion to dismiss filed by Defendant Roblox Corp.

**BACKGROUND**

The Court draws the following facts from Plaintiffs' complaint, accepting them as true and viewing them in the light most favorable to Plaintiffs. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to the complaint, D.G. began playing video games Fortnite, Roblox, Call of Duty, and Grand Theft Auto at the age of six on various devices, including an Android phone and an iPhone. Doc. 1 ¶¶ 27-30. By the time he was nine, D.G. spent six to eight hours a day playing these games and suffered from video gaming addiction. *Id.* ¶¶ 264-66. Due to this addiction, D.G. has undergone out-patient therapy and private tutoring, and suffers from delayed speech. *Id.* ¶ 270. In addition to the thousands of hours played, D.G. has spent hundreds of dollars on in-game transactions and downloadable content. *Id.* ¶¶ 268, 271. Angelilli also alleges that due to "D.G.'s gaming addiction, [she] has been the victim of gamer's rage and withdrawal symptoms." *Id.* ¶ 22.

Plaintiffs commit a significant share of their 210-page complaint to general discussion of video games and how they are designed to be addictive, in-game purchases and rewards, and the various health effects of video gaming on adolescent brains. In terms of Google and Apple specifically, however, there are few factual allegations. Plaintiffs allege that Google operates the

---

[1] This motion to dismiss was filed not only by Google and Apple, but also Defendants Sony Interactive Entertainment LLC ("Sony"), Nintendo of America, Inc. ("Nintendo"), and Microsoft Corporation ("Microsoft"). Doc. 157, 158. Since then, Sony's and Nintendo's claims have been stayed for arbitration, and the case against Microsoft has been voluntarily dismissed. Therefore, this opinion only addresses the motion as to Google and Apple.

2

Google Play app and Apple operates the Apple App Store which are "platform[s] for users to download certain games and play them on" Android and Apple devices. Doc. 1 ¶¶ 468, 477. According to the complaint, Roblox is available in both stores, while Call of Duty is available only on the Apple App Store. *Id*. ¶¶ 469, 478. Google and Apple also offer a "framework for in-app billing" that allows "game developers to sell microtransactions and/or loot boxes," and take a cut of revenue generated by these in-game purchases. *Id*. ¶¶ 470-72, 479-81.

According to Plaintiffs, Google and Apple "hire[d] behavioral psychologists and neuroscientists to design [their] platform[s] and marketing in the best way possible to attract users, especially minors and young adults." *Id*. ¶¶ 475, 484. Plaintiffs also allege that Google and Apple are aware that "several of the games on" their platforms "are addictive and pose unreasonable risk of harm to users, particularly minors." *Id*. ¶¶ 476, 485. Despite being aware of these risks, Google and Apple do not "adequately inform users of the inherent risks involved with using [their] platforms" or the games being played on their platforms. *Id*. ¶¶ 473, 482.

Plaintiffs assert nineteen causes of action against Google and Apple, most of which are premised on allegations that Google and Apple designed their respective stores as "platform[s] to house addictive gaming products and push users to make purchases of addictive materials." *See, e.g.*, Doc. 1 ¶ 507; *see also id*. ¶¶ 555, 573, 593, 612, 685, 688, 716, 719, 741, 763, 786, 806, 822, 824, 878. Specifically, allegations that these stores are dangerous, house dangerously addictive materials, or that Google and Apple failed to properly disclose or represent these facts to Plaintiffs, provides the basis of Plaintiffs' claims of

- products liability (Counts I-VI), *id*. ¶¶ 507, 555, 573, 593, 612;
- negligence (Counts VII-IX), *id*. ¶¶ 666, 667, 685, 688, 716, 719;[2]

---

[2] Count XII is a claim of negligence *per se* predicated on Google's and Apple's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act,, and the Children's Online Privacy Protection Act ("COPPA"). *See* Doc. 1 ¶¶ 650-51, 654-55.

3

- intentional and negligent infliction of emotional distress (Counts X and XI), *id*. ¶ 741, 763;
- violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") (Count XII), *id*. ¶ 786;
- violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count XIII), *id*. ¶¶ 806g; and
- fraudulent or negligent misrepresentation (Count XIV, XV, and XVII), *id*. ¶ 822, 824, 839, 878.

Plaintiffs' remaining counts include a fraudulent inducement claim (Count XVI) brought generally against all Defendants, including Google and Apple, based on "false representations and material misstatements built into each of the Defendants' products," *see id*. ¶ 854, and civil conspiracy and in-concert liability claims (Counts XVIII-XIX) that seek to hold each individual defendant liable for the alleged unlawful acts of all other defendants with respect to Plaintiffs. *Id*. ¶¶ 885-920.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint and draws all reasonable inferences from those facts in a plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). "[M]ore than a sheer possibility that a defendant has acted unlawfully" is required to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint … does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (plaintiff must "provide some specific facts to support the legal claims in the complaint").

## ANALYSIS

Google and Apple raise a number of dismissal arguments, including that Section 230 of the Communications Decency Act ("CDA") and the First Amendment bar all of Plaintiffs' claims. While these are serious challenges to Plaintiffs' theories of liability, the Court will focus its attention on more fundamental issues of sufficiency and intelligibility, and in particular whether Plaintiffs have adequately pled a causal link between their own injuries and Google's or Apple's alleged misconduct.

### I. Sufficiency of the Complaint

The "essential function of a complaint under the civil rules … is to put the defendant on notice of the plaintiff's claim." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001). Two rules are designed with this purpose in mind. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 10(b) requires plaintiffs to state claims in numbered paragraphs "each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). It provides further that where "doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count." *Id*.

Violations of these rules are typically not grounds for dismissal. Sometimes, however, excessive length or lack of plainness can interfere with a complaint's intelligibility enough to make dismissal appropriate. *See Stanard*, 658 F.3d at 797-98 ("Though length alone is generally insufficient to justify rejecting a complaint, unintelligibility is … where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct."); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378

(7th Cir. 2003) ("Length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter.").

One could be forgiven for believing Plaintiffs drafted their complaint without these rules in mind. At 210 pages and 922 paragraphs, the complaint can hardly be considered a "a short and plain statement of the claim" as Rule 8(a) requires. In this case, more does not equal better, as a second problem with the complaint is that despite its vast length, Plaintiffs' defendant-specific claims are hard to decipher because Plaintiffs aggregate many of their factual allegations and claims against different types of products (games, consoles, virtual stores) and entities (developers and platform operators) in a way that makes it difficult to determine which defendant is alleged to have engaged in what conduct in a way that resulted in what harm to Plaintiffs.

This is best illustrated by a few examples: in their brief opposing the motion to dismiss, Plaintiffs argue that Google and Apple are liable under a strict products liability theory for failing to inform users about "feedback loops … in their products … designed to promote increasingly stimulative and alarming content." Doc. 162 at 96-97 (internal quotations omitted), citing Doc. 1 ¶¶ 539, 542. But the complaint only describes "feedback loops" as a feature of video games. *See*, e.g. Doc. 1 ¶¶ 174 ("*video games* include several additional features to keep players engaged … including … feedback loops"); 179 ("[f]eedback loops are systems where the *game* reacts to how well the player is doing"); 180 ("Feedback loops are a core part of *video games*) (emphases added); 355, 362 (describing feedback loops in Call of Duty franchise). Plaintiffs allege nothing to suggest feedback loops are also features of app stores. Similarly, Plaintiffs allege in support of their fraudulent inducement claim that "[u]sers of Defendants' products"—which include the Google Play and Apple App stores—are "induced into microtransactions … through false representations and material misstatements built into each of

6

the Defendants' products." Doc. 1 ¶¶ 852-854. Plaintiffs allege that this inducement occurred by Google's and Apple's use of "patented matchmaking technologies and algorithms," placement of users in "game scenarios requiring additional purchases to advance," "AI avatars," and "disguised features of the Defendants' products, which misrepresent to users, like Plaintiff, that game-selected purchases would help them advance in the game or complete necessary missions." *Id*. ¶ 854. These are plainly features of video games, and it makes no sense to interpret these allegations as referring to Google's or Apple's virtual stores.

When Plaintiffs discuss Google and Apple specifically, their allegations are vaporously thin. The most fundamental problem is that there is no allegation that either Google's or Apple's virtual store was used to access one of the four at-issue games. The complaint alleges that D.G. played unspecified video games on an Android phone and an iPhone and that one or more of Roblox, Call of Duty, and Grand Theft Auto can be purchased on Google or Apple app stores.[3] Doc. 1 ¶¶ 30, 469, 478. But there are no allegations about: (1) which (if any) of the four games that allegedly harmed D.G. was accessed via phone; (2) whether it was the Google or Apple virtual store (or both) used to download that particular game; or (3) who *specifically* accessed the Google or Apple virtual store to do so. All of Plaintiffs' allegations about the virtual stores themselves being addictive and inducing minors to purchase and play games are relevant only if D.G. (the one alleged to have suffered from gaming addiction) used Google's and Apple's virtual stores. Plaintiffs also seem to allege that Google and Apple should be held liable for purchases made inside the games that Google and Apple sell. These claims too lack basic details necessary

---

[3] Which games are available on which virtual store is itself unclear. For example, there is a specific allegation that Roblox is available on the Google Play app. Doc. 1 ¶ 469. However, Plaintiffs allege that Google "conspired with and acted in concert with" developers of Fortnite, Roblox, Call of Duty, and Grand Theft Auto video games. *Id*. ¶ 898. How or why Google might have conspired with video game developers for games it is not alleged to have made available for sale is a mystery.

7

to understand Plaintiffs' theory, such as which games were used to make purchases on which virtual store, whether it was D.G. who made those purchases, and what acts committed by Google or Apple caused D.G. to do so.

Given this lack of specificity, Plaintiffs have not even come close to establishing the proximate cause required for each of the nineteen claims brought against Google and Apple. To plead proximate cause under Illinois law, Plaintiffs' allegations must satisfy two requirements. The first of these requirements is "cause in fact," which is satisfied by allegations suggesting "a reasonable certainty that a defendant's acts caused the injury or damage" for which a plaintiff seeks redress. *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1127 (Ill. 2004). In making this determination, Illinois courts ask whether "whether [a plaintiff's] injury would have occurred absent the defendant's conduct" or whether that conduct was "a material element and a substantial factor in bringing about the injury." *Id*. The second requirement is "legal cause," which is satisfied when conduct is "so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Id*. This requires the Court to assess "whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *Id*. "Although proximate cause is generally a question of fact … the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *Id*. at 1127-1128. Here, because Plaintiffs have offered no specific allegations linking D.G.'s alleged injuries to any conduct by Google or Apple, the complaint lacks both cause in fact and legal cause.

Even Plaintiffs' claims not entirely premised on the operation of virtual stores are unsupported by causal allegations. For instance, in support of their negligence *per se* theory, Plaintiffs allege that Google violated the Children's Online Privacy Protection Act ("COPPA")

8

by, among other things, "[c]ollecting personal information from children who created a Google account" and "storing information about services used by children, queries entered by children and YouTube videos watched by children," and "collecting and retaining children's voice and audio information." *See* Doc. 1 ¶ 650; *see also id.* ¶ 654 (similar allegations as to Apple). But even accepting all these allegations as true, how was D.G. harmed? Plaintiffs aver that Google and Apple collect this data "to analyze the gaming and purchasing behavior of minors," *see id.* ¶¶ 651, 655, but do not allege that D.G. created a Google account, watched any YouTube videos, or searched or purchased anything through a Google (or Apple) service. As such, Plaintiffs have not plausibly alleged that they were affected at all by Google's and Apple's supposed data-gathering activities.

This is not a mere thought exercise. The complaint alleges that D.G. played numerous video games on numerous platforms. As part of the earlier briefing on the motions to compel arbitration, Angelilli averred that it was she, and not D.G., who set up D.G.'s gaming consoles on the Microsoft, Xbox, Nintendo, and Sony platforms. Doc. 164-1 at 3. To the extent it was Angelilli or some other adult who interacted with Google's or Apple's virtual stores on D.G.'s behalf, this is a very different case than if D.G. did so. The Court is cognizant of its obligation to view all of the facts in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor, but here Plaintiffs have not alleged any facts about their use of the Google or Apple app stores. Accordingly, the Court dismisses all nineteen claims in Plaintiffs' complaint as to Google and Apple.

## II. Amendment

Because the Court does not have enough of an understanding at this point as to what Google and Apple are alleged to have done wrong, Plaintiffs are given leave to amend. *See*

9

*Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) ("[A] court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted."). At the very least, the Court expects that any amended complaint would allege what interactions Plaintiffs had with either the Google or Apple virtual stores and how those interactions led to Plaintiffs' injuries. That is, to state a valid claim, Plaintiffs must offer more than general pleading about the addictive nature of the app stores or video games, the fact that the app stores make money from the sale of video games or in-app purchases, or that the app stores do not warn users of either of these things.

The Court also reminds Plaintiffs that for their various fraud-related claims, their allegations must satisfy Rule 9(b)'s heightened pleading standard. *See* FED. R. CIV. P. 9(b) (party "alleging fraud … must state with particularity the circumstances constituting fraud"). Indeed, failure to plead their fraud claims with the particularity required of Rule 9(b) is the basis for the Court's opinion issued today dismissing Plaintiffs' fraud-based claims against Roblox Corp. With respect to Google and Apple, the Court expects Plaintiffs to plead, at minimum, the specific misstatements that each defendant supposedly made, when those statements were made, and which Plaintiff the statements were made to. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (fraud pleading requires plaintiff to identify the "person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal citation omitted). The current allegation (pled verbatim for both Google and Apple) that Google and Apple "misrepresented [their stores were] safe for use by minors and young adults," *see*, *e.g.*, Doc. 1 ¶¶ 823, 878, falls well short of this standard.

To the extent Plaintiffs choose to re-plead as to Google and Apple, they also must keep in mind Section 230 of the CDA, which states that "[n]o provider of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider." 47 U.S.C. § 230(c)(1). When it applies, Section 230 "precludes liability ... where the success of [a plaintiff's] underlying claims requires the defendant to be considered a publisher or speaker of [third-party] content." *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023). In other words, Section 230 shields defendants from legal claims where the beginning and end of a defendant's alleged misconduct is making third-party content available for others to consume. *Compare Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (Section 230 protected website that hosted unlawfully discriminatory advertisements but did not participate in their creation) *with G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023) (no Section 230 protection against claims brought against defendant that provided advice and custom-tailored software to sex trafficking website, as defendant's alleged misconduct did not arise from the publishing of any content).

Section 230 "functions as an affirmative defense." *Salesforce.com*, 756 F.4th at 566. A plaintiff "ordinarily need not anticipate and attempt to plead around affirmative defenses," but may still have their claims dismissed due to an affirmative defense where "the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Plaintiffs do not appear to dispute Google's and Apple's status as interactive computer service providers, or that the four at-issue games—Call of Duty, Grand Theft Auto, Fortnite, and Roblox—were developed by entities other than Google or Apple. Instead, Plaintiffs' main argument for why Section 230 does not apply is that Plaintiffs seek to hold Google and Apple accountable for their "own content" and "own

11

conduct," rather than material developed by third parties. Doc. 162 at 95. The Court is not sure what to make of this assertion, as it seems contrary to Plaintiffs' core allegation that Google and Apple are in this suit because they make addictive games available on their platforms.

If the Court takes Plaintiffs at their word that their claims are premised on the addictive qualities of the Google Play and Apple App stores themselves, *see* Doc. 162 at 96-98, the Court finds no trace of this theory in the current complaint. There are no allegations that D.G. or Angelilli interacted with either the Google Play or Apple App store, or, assuming they did so interact, when and for how long. Nor are there any plausible allegations that these stores—as standalone applications—possess any features that make them addictive. And even if they were addictive, there is no indication that either Plaintiff was harmed by their addiction to the app stores (as opposed to D.G.'s addiction to video games). Plaintiffs are of course entitled to pursue this theory, but if they hope to prevail, more will be required about Plaintiffs' specific interactions with these stores and how these interactions led D.G. and Angelilli to suffer some injury.

As a final note, the Court recognizes that Section 230 does not protect a provider "for creating and posting, inducing another to post, or otherwise actively participating in the posting of" objectionable content. *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Scattered throughout Plaintiffs' complaint are hints that Google and Apple may have played some role in the creation of the offending content. Plaintiffs aver vaguely that Google and Apple "push" players to engage in in-game purchasing and that both take significant cuts of any transactions processed through their in-app payment frameworks. *See, e.g.*, Doc. 1 ¶ 470-72, 479-81, 507, 741. They also allege that Google and Apple "conspired with and acted in concert with [the game developers] to distribute, market, supply, and/or sell … video games and in-game

12

downloadable content" on Google and Apple devices. *Id*. ¶¶ 898-99. Assuming specific facts exist that support the inference that Google and Apple played a role in developing or inducing the development of the games currently sold in their stores, such facts would aid the Court's Section 230 analysis.

Google and Apple also argue that the First Amendment bars Plaintiffs' claims, citing cases granting First Amendment protection for the "dissemination of information," not just its creation, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011), and analogizing their own conduct as virtual store operators to that of physical booksellers. *See Smith v. California*, 361 U.S. 147, 150 (1959) (invalidating on First Amendment grounds the criminal conviction of bookseller for distributing obscene books); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045-46 (7th Cir. 2002) (finding bookselling to be protected First Amendment activity and vacating city ordinance barring such sales). In response, Plaintiffs argue that their claims against Google and Apple "seek to hold [them] accountable for their own conduct," including "commercial speech in connection with … the sale of video games on the … Google Play, or Apple App Store." Doc. 162 at 93.

The Court need not reach the merits of these arguments at this time. Plaintiffs have not alleged any experiences using Google's and Apple's virtual stores, nor any actual commercial speech by Google or Apple related to the sale of video games. Therefore, the Court will wait until Plaintiffs amend their complaint (should they choose to do so) before assessing whether and how the First Amendment bears on their claims. That said, if Plaintiffs choose to amend their claims as to Google and Apple, Plaintiffs should carefully consider the First Amendment reasoning set forth in the accompanying Roblox opinion.

Finally, in choosing whether and how to amend, Plaintiffs' counsel is reminded of their Rule 11 obligation to ensure that facts alleged in the complaint are supported by the evidence as known to Plaintiffs. Not many six-year-olds have a cellular phone. Even fewer have both an Android and an iPhone. It is possible that D.G. was that rare child who had two different models of cellular phone and then used both the Google and Apple app stores to download and play one or more of the four at-issue games, but it is counsel's obligation to ensure this before proceeding with a theory of liability premised on D.G.'s use of both Google's and Apple's stores. Similarly, counsel must ensure that its allegations "will likely have evidentiary support" to the extent counsel chooses to proceed with a theory of liability that Google or Apple affected the content of video games which neither manufactured.[4]

## CONCLUSION

For the foregoing reasons, the motion to dismiss [157] is granted with respect to Google and Apple only.

Dated: April 23, 2025

                                                                                            APRIL M. PERRY
                                                                                           United States District Judge

---

[4] The Court flags, for example, Plaintiffs' current allegation that both Google and Apple "employ[ed] dark patterns in children's gaming apps, e.g., … Call of Duty." Doc. 1 ¶¶ 650, 654.