UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACLYN ANGELILLI, individually and on behalf of D.G., a Minor; <br><br> Plaintiffs, <br><br> v. <br><br> ACTIVISION BLIZZARD, INC.; INFINITY WARD, INC.; TREYARCH CORP.; SLEDGEHAMMER GAMES, INC.; EPIC GAMES, INC.; ROBLOX CORP.; ROCKSTAR NORTH LTD.; ROCKSTAR GAMES, INC.; TAKE-TWO INTERACTIVE SOFTWARE, INC.; SONY INTERACTIVE ENTERTAINMENT LLC; NINTENDO OF AMERICA, INC.; GOOGLE LLC; and APPLE, INC.; <br><br> Defendants. | No. 23-cv-16566 <br><br> Judge April M. Perry |

**OPINION AND ORDER**

Plaintiff Jaclyn Angelilli brought this case individually and on behalf of her minor son, D.G., against numerous developers of video games, gaming consoles, and online sales platforms (collectively, "Defendants"). The thrust of Plaintiffs' complaint is that D.G. began playing video games when he was six years old and at some point became addicted. Plaintiffs further allege that D.G.'s gaming has resulted in serious harm, including emotional distress, lost friends, and problems in school. When his mother tries to limit his video gaming, Plaintiffs claim that D.G. experiences withdrawal symptoms such as rage and physical outbursts that leave his mother fearful and distressed. Seeking redress, Plaintiffs sued Defendants on the theory that their design

decisions and failure to disclose the dangers of their products were the cause of D.G.'s addiction and Plaintiffs' injuries.

This opinion resolves the motion to dismiss filed by Defendant Roblox Corp., the creator of the Roblox game and platform. The Court also issues today its separate opinion resolving the motion to dismiss filed by Defendants Google LLC and Apple, Inc.

## BACKGROUND

The Court draws the following facts from Plaintiffs' complaint, accepting them as true and viewing them in the light most favorable to Plaintiffs. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

D.G. began playing video games at the age of six. Doc. 1 ¶ 27. By the time he was nine, D.G. spent six to eight hours a day playing video games and suffered from video gaming addiction to Fortnite, Call of Duty, Roblox, and Grand Theft Auto. *Id.* ¶¶ 264-66. Due to this addiction, D.G. has undergone out-patient therapy and private tutoring, and suffers from delayed speech. *Id.* ¶ 270. In addition to the thousands of hours played, D.G. has spent hundreds of dollars on in-game transactions and downloadable content. *Id.* ¶¶ 268, 271. Angelilli also alleges that due to "D.G.'s gaming addiction, [she] has been the victim of gamer's rage and withdrawal symptoms." *Id.* ¶ 22.

Roblox Corp. is the creator and operator of Roblox, an "online social gaming platform and game creation system that allows users to program games and play games created by other users." Doc. 1 ¶ 314. Plaintiffs allege that Roblox "contains numerous addictive principles" that encourage "play in excess." Doc. 1 ¶¶ 324, 339. For example, there are a variety of player-created games and maps that can be played on Roblox, which "enable[] an individual to feel happiness and pleasure" when completed and therefore "addict[] users quickly." *Id.* ¶¶ 328-30.

2

On the Roblox platform, Plaintiffs explain, "there are always new challenges, maps, and characters to try, making the game feel like an ever-evolving entity that never stops providing entertainment." *Id*. ¶ 331. Another feature is a "social aspect to Roblox that allows users to interact with friends or other users in game," which "pressures users to spend more money to 'keep up' with or outplay their friends." *Id*. ¶¶ 332-333. Finally, Roblox players can "spend real-world funds to change their avatar's image and abilities." *Id*. ¶ 336.[1] This "ability for users to create their own games [and] … spend real-world funds to change their avatar's image and abilities" are ways Roblox "keeps players 'hooked.'" *Id*. ¶ 336-37. Plaintiffs allege that Roblox Corp. is aware of the "addictive risks inherent in its game" and that many of its users play in excess. *Id*. ¶¶ 338-339. Despite this awareness, Roblox Corp. does not "adequately inform users of the inherent risks involved with using and playing Roblox or that the game was designed to addict and harm users." *Id*. ¶ 341.

Beyond its addictive qualities, Plaintiffs also allege that Roblox possesses "a 'voice chat' feature that requires users … to submit uniquely identifying scans of their face to utilize the feature." *Id*. ¶ 640a. Plaintiffs further allege that Roblox Corp., the creator of Roblox, markets its game as an educational tool and describes the platform as providing "a fun, supportive, and educational space where your child's imagination can thrive." *Id*. ¶¶ 322-23, 340.

Plaintiffs dedicate a large portion of their 210-page complaint to the various ways video games are designed to be addictive, in-game purchases and rewards, and the various health effects of video gaming on adolescent brains. As to their specific interactions with Roblox Corp.,

---

[1] The Court is not familiar with Roblox beyond what Plaintiffs describe but presumes from this allegation that players that use Roblox are represented by virtual avatar. *See id*. ¶ 320 (an in-game screenshot).

3

however, Plaintiffs allege only that "D.G. specifically plays Fortnite, Roblox, Call of Duty, and Grand Theft Auto" and that D.G. at some point became "addicted." *Id.* ¶¶ 29, 264.

Based on these allegations, Plaintiffs assert nineteen causes of action against Roblox Corp., most of which are premised in some way on allegations that Roblox is addictive. *See, e.g.*, Doc. 1 ¶ 507; *see also id.* ¶¶ 539, 555, 573, 593, 612, 685, 688, 716, 719, 741, 763, 786, 806, 822, 824, 839, 878. Specifically, allegations that Roblox is addictive, or that Roblox Corp. failed to properly disclose or represent this fact to Plaintiffs, provide the basis of Plaintiffs' claims of

- products liability for design defects, failure to warn, and failure to instruct (Counts I-VI), *id.* ¶¶ 507, 555, 573, 593, 612;
- negligence (Counts VII-IX), *id.* ¶¶ 660, 670, 685, 688, 716, 719;[2]
- intentional and negligent infliction of emotional distress (Counts X-XI), *id.* ¶ 741, 763;
- violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") (Count XII), *id.* ¶ 786;
- violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count XIII), *id.* ¶¶ 806; and
- fraudulent or negligent misrepresentation (Counts XIV, XV, and XVII), *id.* ¶ 822, 824, 839, 878.

Plaintiffs' remaining counts include a fraudulent inducement claim (Count XVI) brought generally against all Defendants, including Roblox Corp., based on "false representations and material misstatements built into each of the Defendants' products," *see id.* ¶ 854, and civil conspiracy and in-concert liability claims (Counts XVIII-XIX) that seek to hold each individual defendant liable for the alleged unlawful acts of all other defendants with respect to Plaintiffs. *Id.* ¶¶ 885-920.

---

[2] Count XII is a claim of negligence *per se* predicated on Roblox Corp.'s violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Children's Online Privacy Protection Act ("COPPA"), and the Illinois Biometric Information Privacy Act ("IBIPA") for certain data-gathering activities. *See id.* ¶¶ 640-41.

4

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in a plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). "While a complaint … does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (plaintiff must "provide some specific facts to support the legal claims asserted in the complaint").

**ANALYSIS**

Roblox Corp. argues that Section 230 of the Communications Decency Act ("CDA") and the First Amendment bar all of Plaintiffs' claims. Roblox Corp. also asserts a number of claim-specific arguments for dismissal. For the reasons set forth below, the Court concludes that Section 230 and the First Amendment bar the majority of Plaintiffs' claims. For claims not totally foreclosed by Section 230 or the First Amendment, the Court addresses only the arguments necessary for the resolution of this motion to dismiss.

   I.  **Section 230**

Section 230 of the CDA states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 "precludes liability ... where the success of

[a plaintiff's] underlying claims requires the defendant to be considered a publisher or speaker of [third-party] content." *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023); *compare Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (Section 230 barred discrimination claims against website that hosted unlawfully discriminatory advertisements but did not participate in their creation) *with G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023) (no Section 230 protection against claims brought against defendant that provided advice and bespoke software to sex trafficking website because defendant's alleged misconduct did not arise from content publishing). Section 230 "functions as an affirmative defense." *Salesforce.com*, 76 F.4th at 566. A plaintiff "ordinarily need not anticipate and attempt to plead around affirmative defenses," but may still face dismissal if "the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

To qualify for Section 230 protection, Roblox Corp. must be the provider of an "interactive computer service," which is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Plaintiffs have alleged that Roblox hosts sixty-six million daily users on various web-connected devices, including gaming consoles, computers, and mobile devices. Doc. 1 ¶¶ 318, 321. The Court has no trouble concluding that Roblox Corp. is a provider of an interactive computer service and Plaintiffs do not dispute this proposition.

The next question is whether Plaintiffs' claims are based upon Roblox Corp.'s publishing of third-party content. Of the nineteen claims in the complaint, most are premised on the allegation that Roblox is addictive. As such, the Court will analyze whether the qualities that

allegedly make Roblox addictive arise out of Roblox Corp.'s own content or, rather, third-party material published on Roblox.

Plaintiffs allege that Roblox's "addictive properties" are the "constant variety, social aspects, and numerous characters, skins, and other content available for purchase." Doc. 1 ¶¶ 331-336, 507, 741, 763; *see also* Doc. 162 at 27-28 ("By allowing users to create their own worlds and experiences, visit the numerous experiences created in the game by other users, and spend funds to customize their avatars, Roblox Corp. ensures that Roblox offers users varied experiences [that] … addict users and keep them playing for hours every day."). Some of this content is plainly alleged to be third-party content. Most prominently, Plaintiffs describe the variety of games Roblox users create as part of what "addicts users quickly." *Id*. ¶¶ 328-30. To the extent Plaintiffs bring claims premised on the addictiveness of these user-generated games, Section 230 shields Roblox Corp. from liability. *See Craigslist*, 519 F.3d at 671. This is true even though Roblox provides users with tools to create these games, as a service provider does not become liable as a content creator simply because it "provides neutral tools that a user exploits" to tortious ends. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019), citing *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008).

Plaintiffs also argue that because Roblox players are able "to interact with friends or other users in game," there is a "social aspect" to Roblox that contributes to its addictiveness. *Id*. ¶ 332. Plaintiffs' concern seems to be that because players in Roblox are able to interact with each other, Roblox Corp. facilitates the rush and anxieties of peer pressure and socialization. *Id.* ¶ 333 ("The intentional social nature of the game pressures users to spend more money to 'keep up' with or outplay their friends"). While not yet directly addressed by the Seventh Circuit, other

Circuits have concluded that Section 230 immunizes social media platforms from claims premised on the socializing effects and impacts of speech by the platform's users. *See*, *e.g.*, *Estate of Bride by and through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1181-82 (9th Cir. 2024) (barring products liability and negligence claims against operator of online social platform where bullying and harassing speech by platform users led to teen's suicide); *M.P. by and through Pinckney v. Meta Platforms, Inc.*, 127 F.4th 516, 521-22 (4th Cir. 2025) (barring products liability and negligence claims against social media platform premised on allegations that platform pushed extremist, white supremacist content on a user to such a degree that he engaged in racially-motivated mass-shooting). The Court finds the Section 230 analysis in these decisions persuasive and concludes that Section 230 bars Plaintiffs from predicating their addiction-related claims on Roblox's social aspects.

      If the user-created games and social aspects of Roblox were its only allegedly addictive features, Section 230 would bar all of Plaintiffs' addiction-related claims against Roblox Corp. However, Plaintiffs also allege that Roblox players can spend money to modify their in-game avatars and that Roblox Corp. offers "numerous characters, skins, and other content available for purchase." Doc. 1 ¶¶ 336, 507. There is no allegation that these skins and other cosmetic materials are created by anyone other than Roblox Corp., and the reasonable inference is that they are Roblox Corp.'s own content. Thus, despite the fact Plaintiffs have alleged that third-party content is partially responsible for Roblox's addictiveness, the Court cannot conclude that Plaintiffs' complaint establishes unambiguously all elements of a Section 230 defense with respect to all claims.

      Accordingly, the Court declines to dismiss any of Plaintiffs' claims based only upon Section 230. However, as the Court explains below, Roblox Corp.'s own content is protected

8

expression under the First Amendment. Thus, the operation of Section 230 and First Amendment together bar the majority of Plaintiffs' claims.

## II. First Amendment

The First Amendment serves as a defense against claims that seek to attach liability to defendants for engaging in constitutionally protected speech. *See Snyder v. Phelps*, 562 U.S. 443, 458-59 (2011). Both the "creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2002) (selling of books is a form of expression protected by the First Amendment). Thus, the Court's task is to determine whether any of Plaintiffs' claims seek to impose liability on Roblox Corp. for engaging in such speech.

As discussed, most of Plaintiffs' claims require them to prove that Roblox has addictive properties. These addictive properties include "variety, social aspects, and numerous characters, skins, and other content" on Roblox, such as game creation tools. Doc. 1 ¶ 336-37, 507. The Court has concluded that Section 230 shields Roblox Corp. from liability based on its publishing of third-party content, which includes the "variety" of user-created games and "social aspects" of Roblox.[3] As such, the Court need not determine whether the First Amendment independently bars Plaintiffs from seeking to hold Roblox Corp. liable for hosting third-party content.

That leaves only Roblox Corp.'s own content, *i.e.*, the characters, skins, and game creation tools. The First Amendment protects the dissemination of tools used for the preservation of information and ideas. *Am. Civ. Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th

---

[3] Plaintiffs argue that they seek to hold Roblox Corp. liable only for their own content, and not the dissemination of any third-party protected expression, *see* Doc. 162 at 94, but the Court finds this strange given Plaintiffs have alleged that part of what makes Roblox addictive are user-created games. *See* Doc. 1 ¶¶ 324-330.

9

Cir. 2012). Video games are recognized forms of protected expression, *see Brown v. Ent. Merchants Ass'n,* 564 U.S. 786, 790 (2011), and so Plaintiffs may not hold Roblox Corp. liable for offering game creation tools. As for the characters, skins, and other unspecified content, Plaintiffs explain that this content engages players by "mak[ing] sure that the gaming experience is different for players each time they log in." *Id*. ¶ 336. Plaintiffs offer no additional detail about what Roblox's characters, skins, and other content entail or how they work, but to the Court it sounds like Plaintiffs are attempting to premise liability on the fact that Roblox allows users to create avatars with different appearances and purchase different items for their characters. If that understanding is correct, the Court concludes that this content is protected by the First Amendment.

In *Brown*, the Supreme Court recognized that video games express their ideas through both "familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." 564 U.S. at 790. Video games are no less worthy of First Amendment protection because they successfully engage players through features and devices not found in books, films, or other forms of media. *See Am. Amusement Machine Ass'n v. Kendrick*, 244 F.3d 572, 577 (7th Cir. 2001) (interactivity is a "superficial [and] erroneous" distinction between video games and other forms of literary media, for purposes of First Amendment analysis). Plaintiffs label Roblox "addictive," but this just seems like another way of saying that Roblox's interactive features make it engaging and effective at drawing players into its world, and First Amendment protections do not disappear simply because expression is impactful. *See Snyder*, 562 U.S. at 461-62. To the contrary, that is when First Amendment protection should be at its zenith. *Kendrick*, 244 F.3d at 577 ("All literature (here broadly defined to include movies, television,

and the other photographic media, and popular as well as highbrow literature) is interactive; the better it is, the more interactive.").

Plaintiffs make a few arguments for why the First Amendment is not implicated, the primary being that Plaintiffs only seeks to hold Roblox Corp. liable for its conduct, not content.[4] *See* Doc. 162 at 94. It is true that not all conduct is considered protected expression. *See*, *e.g.*, *Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017) (public-nudity ordinance regulates conduct, not speech). But here, the primary tortious conduct alleged by Plaintiffs is the way the Roblox world and its characters are designed,[5] and the First Amendment is not so feeble that it can be circumvented by framing acts of creation as "conduct" rather than expression. *See Alvarez*, 679 F.3d at 596 ("the process of expression through a medium has never been thought so distinct from the expression itself" that one but not the other is protected by the First Amendment), quoting *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010). Nor can Plaintiffs avoid a First Amendment inquiry by arguing that Roblox's characters and their skins do not advance any particular idea. The First Amendment has long protected acts of expression not obviously linkable to a particular concept. *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) ("a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a particularized message, would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll.") (internal citations omitted). At its core, what Plaintiffs complain of is the words and images that

---

[4] Despite Plaintiffs' repeated argument that they are not challenging Defendants' content, the Court notes that the complaint uses the word "content" 109 times.
[5] Misrepresentation is the other bucket of tortious conduct alleged, which the Court will discuss below.

appeared on D.G.'s various gaming devices, and the effect that Plaintiffs believe those words and images had on D.G.'s brain and behavior. As such, the Court rejects Plaintiffs' argument that the First Amendment does not apply because they target only conduct, not content.

The Court similarly rejects Plaintiffs' argument that the First Amendment is not implicated because "Defendants could have prevented [Plaintiffs'] injuries by fixing the defective features without changing any content at all." Doc. 162 at 52. This is about as persuasive as saying the First Amendment would not be implicated by a mandate that authors not end chapters on cliffhangers because moving a chapter heading does not affect a book's content. The reason video games allegedly injured Plaintiffs is because they were so engaging D.G. could not stop playing. If Plaintiffs' allegations are accepted as true, to remove the engaging elements of the game would be to fundamentally alter a user's playing experience.

Nor is the Court persuaded by Plaintiffs' argument that the portions of the video games they object to are not protected speech because the words and images were generated by algorithms, and "machines have no First Amendment protection." Doc. 162 at 81. Thankfully, we do not yet live in a science-fiction dystopia in which computers, on their own initiative, command us to act at their behest. Therefore, the Court can save for another day the question of whether a computer that develops sentience is entitled to the protection of the First Amendment. In this case, Plaintiffs' theory of liability rests on the many allegations in the complaint that Roblox was performing exactly how Roblox Corp. had designed it to perform. Given that the

algorithms of which Plaintiffs complain were developed by humans and generated words and images its human creators intended, the First Amendment applies.[6]

Finally, Plaintiffs assert that the First Amendment does not apply to commercial speech in advertising and marketing Roblox, or for speech in connection with the sale of Robux, an in-game currency. Doc. 162 at 94; Doc. 1 ¶ 316. It is true that speech that proposes a commercial transaction receives less protection under the First Amendment than non-commercial speech. *Jordan v. Jewel Food Stores, Inc*., 743 F.3d 509, 516 (7th Cir. 2014). To the extent Roblox Corp. marketed Roblox as "educational" and providing "a fun, supportive, and educational space," such statements would constitute commercial speech. *Id*. ¶¶ 322-23. It is possible that in-game offers for users to purchase virtual items with Robux also could constitute commercial speech. But the problem for Plaintiffs is that, even accepting as true that some of Roblox Corp.'s statements receive less First Amendment protection, none of Plaintiffs' injuries appear to stem from these statements. For example, whatever Roblox Corp. may have said to market Robux, the complaint does not allege that D.G. purchased any Robux.[7] And similarly, while Roblox may

---

[6] Plaintiffs cite two Second Circuit cases regarding First Amendment treatment of computer code. *See* Doc. 162 at 92, citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 249 ,251 (2d Cir. 2001); *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94, 111 (2d Cir. 2000). The Court is not persuaded that these cases, even if binding, would require the Court to reach Plaintiffs' desired outcome. Neither *Corley* nor *Vartuli* holds that computer code is never entitled to First Amendment protection. *See Corley*, 273 F.3d at 449 ("computer code, and computer programs constructed from code can merit First Amendment protection" and interpreting *Vartuli*). In the context of this case, the Court thinks the better way to think of code is a tool that Roblox Corp. uses to engage in expressive creation, as is paint to a painter or paper to an author. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011) (video games are protected expression); *Am. Civ. Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (tools used in the process of creating expressive works entitled to First Amendment protection).

[7] Frankly, the Court does not understand Plaintiffs' claims as to Robux. Plaintiffs have alleged only that D.G. spent unspecified amounts of money in unspecified games by nature of his video game addiction. Plaintiffs do not allege that D.G. did not get what he paid for, nor do they allege that whatever he bought was itself harmful, nor have they distinguished between items that D.G. may have bought directly from Roblox and items purchased through games designed by others in the Roblox universe. Plaintiffs' argument that Roblox is aware "the ease of spending Robux often leads to overspending," Doc. 162 at 27, is one that could be made about any non-cash payment method – from credit cards to hotel tabs.

have been marketed as "educational," the complaint does not allege that Plaintiffs ever heard, much less were harmed by, that statement.

In summary, the Court concludes that Plaintiffs have offered no bases for holding Roblox Corp. liable for the "addictive" qualities of Roblox that are not foreclosed by either Section 230 of the CDA or the First Amendment. Accordingly, the Court dismisses the products liability claims (Counts I-VI), ordinary and gross negligence claims (Counts VIII-IX), and infliction of emotional distress claims (Counts X-XI).

### III. Claim-Specific Arguments

The claims not dismissed outright by the operation of Section 230 and First Amendment are Plaintiffs' claims of negligence per se (Count VII), fraud and misrepresentation (Counts XII-XVII), and in-concert liability and civil conspiracy (Counts XVIII-XIX). The Court turns now to Roblox Corp.'s arguments for dismissal of these claims.

#### a. Negligence *per se*

Under Illinois law, the "violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence." *Kalata v. Anheuser-Busch Cos., Inc.*, 581 N.E.2d 656, 661 (Ill. 1991). However, for violation of a statute to underpin a claim of negligence *per se*, the legislature must clearly intend to impose strict liability for violations of that statute. *Abassi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999). Illinois courts have found such intent lacking where a statute requires proof of a mental state or where reasonable care is a defense to liability under the statute. *See Bybee v. O'Hagen*, 612 N.E.2d 99, 103 (Ill. App. Ct. 1993) (declining to find intent to impose strict liability where statute punishes willful violations); *Barthel v. Illinois Cent. Gulf R. Co.*, 384 N.E.2d 323, 327 (Ill. 1978) (no strict liability where violator of statute could "avoid[] liability by showing he exercised due care").

14

Plaintiff's negligence *per se* claim against Roblox Corp. is premised on violations of the Children's Online Privacy Protection Act ("COPPA"), ICFDBPA, IUDTPA, and the Illinois Biometric Information Privacy Act ("IBIPA"). The Court agrees with Roblox Corp.'s argument that the first three of these statutes do not impose strict liability. COPPA liability only attaches where an online service provider collects or maintains information from a child with "actual knowledge," a heightened *mens rea* that is inconsistent with an intent to impose strict liability. 16 U.S.C. § 312.3. Similarly, ICFDBPA and IUDTPA require proof of intent to defraud or mislead and therefore may not be relied on to sustain a negligence *per se* action. *See* 815 ILCS § 505/2 (requiring "intent that others rely upon the concealment, suppression or omission" of material facts); *People ex. rel. Foxx v. Anthony's Remodeling, Painting & Decorating, Inc.*, 2022 WL 782596 (Ill. App. Ct. Mar. 15, 2022) (stating that elements of violation of 815 ILCS § 510/2 include intent that consumers rely on the deceptive act or practice).

As for IBIPA, the Court agrees with Roblox Corp. that Plaintiffs have failed to plausibly allege an IBIPA violation. IBIPA provides that a company may not "collect, capture, … or otherwise obtain" a person's biometric information absent notice and consent. 740 ILCS § 14/15(b). Plaintiffs allege that Roblox Corp.'s voice chat feature violates IBIPA. Doc. 1 ¶ 673. However, Plaintiffs do not allege that either D.G. or Angelilli ever used this voice chat feature and so have not plausibly alleged that their data was ever collected in violation of IBIPA. Nor have Plaintiffs alleged that Roblox did not provide them with notice about voice chat or obtain consent that such a feature be used. Accordingly, Plaintiffs' negligence *per se* claim is dismissed.

b. **Fraud-based claims**

To survive dismissal, claims of fraud must meet a heightened pleading standard. FED. R. CIV. P. 9(b) (parties "alleging fraud … must state with particularity the circumstances constituting fraud"). This standard applies not just to fraud claims, but all claims premised on alleged fraudulent acts. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (applying heightened 9(b) standard to ICFDBPA claim premised on concealed, misrepresented information); *Kahn v. Walmart Inc.*, 107 F.4th 585, 602 (7th Cir. 2024) (statutory claims based on deception are subject to heightened 9(b) pleading standard).

Seven of Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading standard. These include Plaintiffs' claims of fraudulent misrepresentation and inducement (Counts XIV-XVI) as well as their two Illinois statutory claims (Counts XII-XIII). *See* Doc. 1 ¶¶ 786g, 806g (ICFDBPA and IUDTPA claims both premised on Roblox "[u]sing false and misleading representations, while omitting and concealing material facts, relating to the safety" of its product). Plaintiffs' civil conspiracy and in-concert liability claims (Counts XVIII-XIX) are also predicated on fraudulent conduct. *See id*. ¶¶ 901 ("Each Defendant shared a common purpose of fraudulently concealing the unreasonable risk of harm in its gaming product[s]."); 915 ("Each Defendant thus assisted in continuing to fraudulently conceal the unreasonable risk of harm in its own gaming product, and in all others.").

"The precise level of particularity required under Rule 9(b) depends on the facts of [a] case, but the rule 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Kahn*, 107 F.4th at 594 (internal citation omitted); *see also U.S. ex rel Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 655 (7th Cir. 2022) (exact level of details required by Rule

16

9(b) may vary, but allegations "must inject precision and some measure of substantiation into their allegations of fraud."). At the very least, Rule 9(b) requires Plaintiffs' complaints of fraud to allege the specific misstatements made by Roblox Corp., when those statements were made, and to which of the two Plaintiffs. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (fraud pleading requires plaintiff to identify the "person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal citation omitted).

Plaintiffs fail to meet this standard. The only specifically alleged misrepresentation by Roblox Corp. is the statement that "Roblox provides a fun, supportive, and educational space where your child's imagination can thrive." Doc. 1 ¶ 322. Roblox Corp. argues that this general claim is mere "puffing," which refers to "exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). These sorts of general statements are not actionable as fraud. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). The Court agrees with Roblox Corp. that descriptions of a platform as "fun," "supportive," and "educational" are nonactionable puffery because whether Roblox is fun, supportive, or educational are not assertions of fact that can be precisely determined.[8] As such, this lone representation cannot support Plaintiffs' various fraud claims. Even if such a statement could support a fraud claim under certain circumstances, Plaintiffs have not alleged a time, place,

---

[8] Additionally, Plaintiffs' allegations in the complaint belie the notion that these claims are false or misleading. Specifically, Plaintiffs' complaint alleges that Roblox is harmfully addictive in large part because it is *too* fun and supportive. Plaintiffs' real argument is not that these claims are false or misleading, but that in the aggregate the harm of the product outweighs its benefits. *See, e.g.,* Doc. 1 ¶ 325 ("While video games can foster creativity in children through their abundance of creative tasks, such benefits are outweighed by the negative aspects of addiction"). That, however, is different from fraud.

17

or method by which the statement reached Plaintiffs. *See Vicom*, 20 F.3d at 777.[9] Thus, since Plaintiffs alleged no other specific, actionable misstatements by Roblox Corp. to support their fraud-based claims (Counts XII-XVI), the claims are dismissed for failure to comply with Rule 9(b). For the same reason, Plaintiffs' claims of civil conspiracy and in-concert liability (Counts XVIII-XIX) are also dismissed as they are predicated in part on fraudulent conduct.

### c. Negligent misrepresentation

Plaintiffs also bring a claim against Roblox for negligent misrepresentation (Count XVII). The elements of negligent misrepresentation are the same as for fraud, except that the defendant need not know the statement was false. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281,1288 (Ill. App. Ct. 2013). Puffing statements are not actionable misrepresentations for purposes of a negligent misrepresentation claim. *See Abazari v. Rosalind Franklin Univ. of Med. and Science*, 40 N.E.3d 264, 273 (Ill. App. Ct. 2015) (statements about "unprecedented and limitless opportunity" not sufficient to state claim for negligent misrepresentation); *see also Avon Hardware*, 998 N.E.2d at 1288 ("The basis of a fraud or negligent misrepresentation claim must be a statement of fact, not an expression of opinion.").

As discussed above, the only alleged misrepresentation by Roblox Corp. is non-actionable puffing about Roblox being a "fun, supportive, and educational space where your child's imagination can thrive." Doc. 1 ¶ 332. Although negligent misrepresentation claims are not subject to a heightened pleading standard, Plaintiffs must still pinpoint an allegedly false

---

[9] Though not required to address the argument, the Court thinks it prudent to respond to Plaintiffs' assertion that they have particularly alleged "where" and "when" as to every Defendant because the representations occurred "everywhere and always." Doc. 162 at 61. This vague statement plainly does not satisfy the Rule 9(b) requirement that fraud allegations identify with particularity the context in which the alleged misstatement was communicated to Plaintiff, and the Court will expect more from Plaintiffs should they choose to amend their fraud-based allegations.

statement to state a negligent misrepresentation claim. As Plaintiffs have not done so, the Court dismisses Plaintiffs' negligent misrepresentation claim, without needing to reach whether Plaintiffs have adequately pled the claim's other elements.

### IV. Amendment

In summary, all of Plaintiffs' nineteen claims are dismissed, either due to operation of Section 230 of the CDA and the First Amendment (Counts I-VI, VIII-XI) or failure to state a claim adequately (Counts VII, XII-XIX). These dismissals are without prejudice, and Plaintiffs are given leave to amend. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) ("[A] court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted."). To be clear, the Court is skeptical that Plaintiffs could amend their addiction-related claims such that they would not be foreclosed by Section 230 or the First Amendment. That said, Plaintiffs have offered very little detail about D.G.'s interactions with Roblox or what Roblox did (as opposed to Roblox's third-party content creators or other Defendants) to injure Plaintiffs. On the chance that there are additional facts that would support a cause of action consistent with this opinion, Plaintiffs will be allowed to amend and allege them.

### CONCLUSION

For the foregoing reasons, Roblox Corp.'s motion to dismiss [137] is granted.

Dated: April 23, 2025

_____
APRIL M. PERRY
United States District Judge